# Exhibit A

# United States Court of Appeals for the Federal Circuit

2007-1434

REN JUDKINS

Plaintiff-Appellee,

v.

HT WINDOW FASHION CORP.,

Defendant-Appellant.

Lynn J. Alstadt, Buchanan Ingersoll & Rooney PC, of Pittsburgh, Pennsylvania, argued for plaintiff-appellee.  With him on the brief were Bryan J. Opalko and Ralph G. Fischer.

Arne M. Olson, Olson & Hierl, of Chicago, Illinois, argued for defendant-appellant. With him on the brief were Joseph M. Kuo and Matthew D. Kellam.

Appealed from: United States District Court for the Western District of Pennsylvania

Judge Gary L. Lancaster

# United States Court of Appeals for the Federal Circuit

2007-1434

REN JUDKINS,

Plaintiff-Appellee,

v.

HT WINDOW FASHION CORP.,

Defendant-Appellant.

Appeal from the United States District Court for the Western District of Pennsylvania in case No. 07-CV-0251, Judge Gary L. Lancaster.

_____

DECIDED: April 8, 2008

_____

Before MICHEL, <u>Chief Judge</u>, BRYSON, <u>Circuit Judge</u>, and KENNELLY, <u>District Judge</u>.[*]

KENNELLY, <u>District Judge</u>.

Appellee Ren Judkins sued appellant HT Window Fashion Corporation ("HT") for infringement of Judkins's patents relating to window coverings. HT counterclaimed for, among other things, unfair competition, alleging that Judkins violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by sending HT's customers and potential customers letters stating that an HT product infringed his patents.

_____

[*] Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

The United States District Court for the Western District of Pennsylvania denied HT's motion for a preliminary injunction on the counterclaim. HT has appealed from the denial of the preliminary injunction. HT contended in the district court and argues on appeal that Judkins acted in bad faith when he sent the letters because he knew that his U.S. Patent No. 7,182,120 B1 ("the '120 patent"), which the letters suggest is infringed by HT's Polaris product, was unenforceable. We affirm the district court's denial of the preliminary injunction and deny Judkins's motion for attorney's fees.

BACKGROUND

Judkins developed the so-called T19 process for manufacturing window coverings in the early 1990s and had his lawyer draft a patent application in 1991. He did not, however, file the application (U.S. Patent Application No. 08/412,875 ("the '875 application")) until 1995. In 1996, another inventor filed a patent application for a similar product that issued the next year as U.S. Patent No. 5,692,550 ("the '550 patent").

The '550 patent was assigned to Newell Window Furnishings, Inc. In early 1998, Newell filed a patent infringement suit involving the '550 patent in the United States District Court for the Northern District of Illinois. See Newell Window Furnishings, Inc. v. Springs Window Fashions Div., No. 98-CV-50003, 1999 WL 1077882 (N.D. Ill. Oct. 7, 1999) ("the Springs litigation"). Judkins was not a party to this litigation, but his T19 invention was analyzed as prior art, and he and his attorney testified in the case.

Also in early 1998, Judkins sought an interference between the '550 patent and his own U.S. Patent Application No. 08/756,282 ("the '282 application"), which was a continuation of his '875 application. Interference No. 104,329 was declared in January

1999, and the proceedings that flowed from it comprise a second, discrete chain of events underlying this appeal.

In October 1999, the trial court in the Springs litigation ruled that the defendant could not show that the '550 patent was anticipated by Judkins's invention. Specifically, the court ruled that the defendant in that case could not rebut the inference, drawn from Judkins's four-year delay in applying for a patent, that he had suppressed, concealed, or abandoned his invention. Newell Window Furnishings, 1999 WL 1077882, at *25-26. The court nonetheless held the '550 patent invalid, albeit on unrelated grounds. Id. at *33-42. The trial court's ruling, although not specifically the part of it that touched on Judkins's inferred abandonment of his invention, was affirmed by this court in 2001. Newell Window Furnishings, Inc. v. Springs Window Fashions Div., 15 Fed. Appx. 836 (Fed. Cir. 2001).

Also in 2001, the Board of Patent Appeals and Interferences ("Board") ruled in the interference proceeding that Judkins had abandoned his invention and awarded priority against him. Both Judkins and Newell were thus in a difficult position in 2001. The Board had ruled that Judkins had abandoned the subject matter of the '282 application, precluding the issuance of a patent to him. For its part, Newell had no valid patent because this court had affirmed the finding of invalidity in the Springs litigation.

Two months after the Board's ruling, in November 2001, Judkins filed suit under 35 U.S.C. § 146 in the Western District of Pennsylvania seeking to overturn the Board's decision and specifically seeking a determination that the invention of the '550 patent was derived from his invention. Following a September 2003 settlement agreement between Judkins and Newell, Judkins filed an unopposed motion asking the court to

vacate the Board's ruling that he had abandoned his invention.  As part of the settlement, Newell received a fully paid, perpetual license to any patents that would issue on the T19 process once the Board's ruling was vacated.  Judkins's motion made no reference to the finding in the Springs litigation that Judkins had abandoned his invention.  The finding had, however, been mentioned in a motion to dismiss that Newell had filed early in 2002, and a copy of the relevant ruling was attached to that motion.

When the judge in the Western District of Pennsylvania entered the Judkins-Newell proposed order without modifying it, the district court "[found] that Judkins did not suppress or conceal the invention" and vacated the Board's determination that Judkins was not entitled to a patent.  The Board responded by granting priority to Judkins's '282 application over the '550 patent.  As a result, Judkins obtained the '120 patent in February 2007.

Shortly before the patent issued, Judkins sent letters to HT's customers and potential customers warning of likely infringement by HT's Polaris product.  HT brought suit in the United States District Court for the Central District of California in an attempt to stop Judkins from sending such letters.  Soon after, Judkins filed an infringement suit in the Western District of Pennsylvania.  The California case was transferred to Pennsylvania because the California district court held it lacked personal jurisdiction over Judkins.  The two suits were then consolidated.

In the decision under review, the district court denied HT's motion for a preliminary injunction.  It held that HT could not establish bad faith or overcome the presumption of the patent's validity by clear and convincing evidence and therefore could not show the requisite likelihood of success on the merits of its Lanham Act claim.

According to the district court, in support of HT's motion, it submitted only "its recitation of the history of litigation regarding the '282 Application[, to which the '120 patent claims priority], and a statement of its belief that the '120 patent is nothing more than a spawn of [Judkins's] abuse of the patent system." Judkins v. HT Window Fashions Corp., 514 F. Supp. 2d 753, 765 (W.D. Pa. 2007).  This, the district court held, was insufficient to show that HT had a likelihood of prevailing on its section 43(a) claim.

The district court also noted that "the irreparable harm balance does not weigh in [HT's] favor" because patentees in Judkins's position have a right to protect their inventions by, among other things, warning the marketplace against infringement.  Id. at 766.  In contrast, the court found any harm to HT was not "particularly irreparable" because it would only take the form of lost sales compensable through monetary relief. Id. at 767.  The court concluded that the balance of harms was an alternative basis to deny HT's motion for a preliminary injunction.

## DISCUSSION

A.    Standard of review

The grant or denial of preliminary injunctive relief in a Lanham Act Case is generally a matter of procedural law not unique to the exclusive jurisdiction of the Federal Circuit.  Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 894 (Fed. Cir. 1998) (internal citations omitted).  Accordingly, we apply in this case the procedural law of the regional circuit where this case was brought.  That said, "the Federal Circuit has itself built a body of precedent applying these general considerations to a large number of factually variant patent cases, and we give dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues."  Id.

In the Third Circuit, a party seeking an injunction must show that each of four factors favors the requested relief: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." McNeil v. Heartland Sweeteners, LLC, 511 F.3d 350, 356-57 (3d Cir. 2007) (citing Shire U.S. Inc. v. Barr Labs. Inc., 329 F.3d 348, 352 (3d Cir. 2003)); cf. Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d 1325, 1329 (Fed. Cir. 2000) (applying an essentially identical test).

The first of these elements—the movant's chances for success on the merits—is critical in this case because it was the principal ground on which the district court denied HT the relief it sought. To prevail on an unfair-competition claim under section 43(a) of the Lanham Act stemming from a patentee's marketplace activity in support of his patent, the claimant must first establish that the activity was undertaken in bad faith. Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999). "[A] patentee has a right to inform potential infringers of a patent and potentially infringing activity unless the communication is made in bad faith." GP Indus., Inc. v. Eran Indus., Inc., 500 F.3d 1369, 1374 (Fed. Cir. 2007) (citing Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1386 (Fed. Cir. 1998) and 35 U.S.C. § 287). Although bad faith in this context has both objective and subjective elements, the former is a threshold requirement: "a bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless," meaning no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent. Id. at 1374

(citing Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993)).  If a district court weighing a motion to enjoin a patentee from communicating its rights determines the patent in question is not necessarily invalid or unenforceable, the objective baselessness requirement is not met, and no injunction should issue.  Id. at 1375.  This court has made it clear that "[a]n injunction against communication [of patent rights] is strong medicine that must be used with care and only in exceptional circumstances."  Id. at 1374.  Indeed, once the court concludes that the claims of infringement are objectively baseless, the court must then consider whether the claims were made in subjective bad faith.  Cf. Prof'l Real Estate Investors, 508 U.S. at 60.

We review the district court's denial of a motion for preliminary injunctive relief for abuse of discretion; we review the underlying factual determinations for clear error and legal conclusions de novo.  McNeil, 511 F.3d at 357; Tate Access Floors, Inc. v. Interface Architectural Resources, Inc., 279 F.3d 1357, 1364 (Fed. Cir. 2002).  Under Third Circuit law, a district court abuses its discretion when its decision rests on "a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  Am. Civil Liberties Union of N.J. v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1476 (3d Cir. 1996).  Similarly, "[a]n abuse of discretion may be established under Federal Circuit law by showing that the court made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding."  Abbott Labs. v. TorPharm, Inc., 503 F.3d 1372, 1380 (Fed. Cir. 2007) (citing Lab. Corp. of Am. Holdings v. Chiron Corp., 394 F.3d 1327, 1331 (Fed. Cir. 2004)).

B.     Likelihood of success on the merits

HT argues the district court erred with regard to its chances for success on the merits in two primary ways.  First, HT argues that the district court failed to consider Judkins's conduct during the prosecution of the '120 patent.  The patent, HT argues, was "acquired through a combination of conspiracy and inequitable conduct, before both the Patent Office and a Federal Court," making it unenforceable, so that Judkins's threats to enforce it were in bad faith.  HT also argues the district court improperly discounted the materiality of the abandonment finding in the Springs litigation and improperly applied a presumption of validity to patents that, HT contends, were fraudulently obtained.  Second, HT argues, rather than using the "objectively baseless" standard for bad faith, the district court required HT to provide evidence of Judkins's subjective knowledge of bad faith and improperly failed to shift to Judkins the burden of justifying his conduct after HT made out a prima facie case of bad faith.

We do not agree that the district court abused its discretion when it denied HT's request for a preliminary injunction.  We determine that the court did not clearly err in weighing the relevant factors and did not rely on erroneous legal or factual premises when it concluded that HT failed to show a likelihood of success on the merits of its Lanham Act claim.

1.     "Sham" litigation and settlement

First, the evidence relating to Judkins's conduct during the '120 patent's prosecution does not point so unequivocally to bad faith that we are compelled to accept HT's argument that the district court must have "ignored" this evidence and

therefore based its ruling on clearly erroneous factual findings.  HT says that two "prior bad acts" by Judkins were but-for causes of the '120 patent's issuance:  "sham litigation" aimed at overturning the Board's decision awarding priority against Judkins, and Judkins's supposed failure to disclose the abandonment finding in the Springs litigation to either the patent office or the Western District of Pennsylvania in the suit he brought to overturn the Board's interference decision.   These acts, HT asserts, constitute a breach of the duty of candor owed by patent applicants under 37 C.F.R. § 1.56.  See also Manual of Patent Examining Procedure §§ 2001.04 & 2001.06(c) (8th ed., Rev. 6, 2007); McKesson Info. Solutions, Inc. v. Bridge Med., Inc., 487 F.3d 897, 917-18 (Fed. Cir. 2007).

The 2001 suit was not obviously a "sham."  Judkins was entitled to seek review of the Board's decision awarding priority to the Ford patent, as well as all issues raised by that decision, in a district court pursuant to 35 U.S.C. § 146.  See Gen. Instrument Corp., Inc. v. Scientific-Atlanta, Inc., 995 F.2d 209, 211 (Fed. Cir. 1993).  Nothing in the record suggests Judkins believed that he stood no chance of prevailing outright in that action.   Indeed, he pursued just that result for nearly two years before reaching a settlement with Newell—hardly a span of time one would expect sham litigants to wait to reach a collusive bargain.  Moreover, Newell moved the district court to dismiss the case in January 2002.  Had Newell prevailed on this motion, which the record shows was capably briefed by its attorneys, Judkins would have been stuck with the Board's ruling.   Newell's motion is not what one expects of a "strawman" or "supposed opponent" sued as part of a scheme to "subvert[] the adversarial process," as HT asserts.  For these reasons, the evidence relating to the 2001 suit does not suggest that

the district court clearly erred in evaluating the facts HT asserts establish its likelihood of success on the merits.

HT's assertion of a conspiratorial settlement of the lawsuit similarly fails to persuade us that the district court overlooked a breach of the duty of candor or other glaringly obvious misconduct.  The fact that both Judkins and Newell took from the settlement something of value points to a constructive, mutually beneficial resolution to a legitimate dispute.  HT's argument that the settlement was a "breakdown of the adversarial system" is difficult to square with the principle that the law favors settlement of litigation.  See Bergh v. Dep't of Transp., 794 F.2d 1575, 1577-78 (Fed. Cir. 1986) (citing United States v. Contra Costa County Water Dist., 678 F.2d 90, 92 (9th Cir. 1982)).  When genuine adversaries reach a mutually agreeable compromise and present their agreement in detail to the court, and no fraud or other problems militate against the agreement's enforcement, public as well as private interests are best served by giving effect to the settlement.  Cf. Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Although the courts well recognize the public as well as private interest in the finality of settlements, . . . a settlement will not be enforced if it is tainted by fraud or another condition that warrants its rescission.").

Was the settlement agreement resolving the section 146 action obviously tainted by fraud?  HT argues it was, because Judkins did not disclose the abandonment finding in the Springs litigation to the court in connection with the settlement agreement.  Yet HT also acknowledges that Newell had disclosed the abandonment finding to the Pennsylvania district court when it moved to dismiss the 2001 suit.  Thus, HT's argument assumes that the court confined itself to the stipulations the parties put before

it in Judkins's agreed motion for summary judgment and ignored the rest of the record, including an earlier dispositive motion. We decline to make this assumption about that court's diligence. The district court in this case did not clearly err when it failed to find that the settlement was collusive and therefore treat it as irrefutable evidence of Judkins's bad faith in later asserting the '120 patent.

HT also asserts that Judkins did not disclose the finding in the Springs litigation to the patent examiners during the prosecution of the '120 patent and thus again breached the duty of candor. HT does not, however, elaborate on this assertion in its brief. Judkins countered at oral argument that Newell submitted the Illinois decision to the Board during the interference proceedings and that record in turn went to the examiners who eventually approved the '120 patent.[1] HT's assertion does not rebut the inference that the patent examiners who approved the '120 patent had access to the record from the interference, including the findings in the Springs litigation supplied by Newell.

### 2. Materiality of the abandonment finding in the Springs litigation

HT next argues that the district court improperly discounted the materiality of the finding in the Springs litigation that Judkins had abandoned, suppressed, or concealed his invention. HT insists that the finding was per se material under 37 C.F.R. § 1.56, the Manual of Patent Examining Procedure, and caselaw. The district court erred, HT says, by analyzing whether the finding in the Springs litigation was substantively correct

---

[1]  Judkins also argues that the Springs litigation finding was essentially cumulative of the Board's initial determination and thus was not material. The two decisions reached essentially the same result, and 37 C.F.R. § 1.56(b) suggests that information "cumulative to information already of record" may not be material. Because this point is not dispositive, we need not decide it in the context of the present appeal.

without regard for its <u>per se</u> materiality and the issue of whether it was properly disclosed.

The district court concluded that "[t]here were no controlling adverse decisions regarding the validity of the '120 Patent" when it issued. <u>Judkins</u>, 514 F. Supp. 2d at 766. Specifically, the Board's finding of abandonment had been overturned, and "the effect of [the finding in the Springs litigation] on the validity of the '120 Patent can be reasonably questioned," not least because Judkins had not been not a party to that litigation. <u>Id.</u> The district court balanced the "unfavorable" finding in the Springs litigation against its own earlier reversal of the Board's decision awarding priority against Judkins and concluded that "[t]he status of the '120 Patent is open to reasonable debate on this point." <u>Id.</u>

We do not agree that the district court impermissibly questioned the substance of the finding in the Springs litigation. Rather, the court took the finding as a given but said it was not dispositive of bad faith in light of other evidence. Indeed, the court said "the effect of [the finding] on the validity of the '120 Patent can reasonably be questioned," <u>not</u> that "the finding can reasonably be questioned." This distinction is reflected in the district court's statement about controlling adverse precedents and its weighing of favorable versus unfavorable precedents. We cannot say that this amounted to clear error on the part of the district court.

### 3.    The presumption of validity

HT next argues that the district court improperly applied a presumption of validity to patents that it should have realized were invalid because they were fraudulently acquired. But we held in <u>Zenith</u> that "[a] patent procured through inequitable conduct is

not invalidated thereby," although it may be held unenforceable on that basis "as a matter of equitable principle."  182 F.3d at 1349.  For this reason, the district court's invocation of the presumption of validity that attaches to the '120 patent was not erroneous.  HT may yet prove—as it must, by clear and convincing evidence, Molins PLC v. Textron, 48 F.3d 1172, 1178 (Fed. Cir. 1998)—that the '120 patent is unenforceable.  But the possibility of inequitable conduct behind the patent-in-suit was not so clear-cut that the district court's reliance on the presumption of validity made its denial of the preliminary injunction an abuse of discretion.

### 4.  "Objective baselessness" standard and prima facie case of intent

HT also argues the district court committed error in not using the "objective baselessness" standard for bad faith.  We are not persuaded that the court applied the wrong legal standard to the evidence.  The district court's discussion expressly invoked the proper standard and cited to this court's leading case linking bad faith to objective baselessness.  Judkins, 514 F. Supp. 2d at 762 (citing Globetrotter Software v. Elan Computer Group, Inc., 362 F.3d 1367, 1375, 1377 (Fed. Cir. 2004)).

Moreover, the district court at several points in its opinion indicated that Judkins's claims were not objectively baseless, albeit without using that exact phrase.  For example, the district court made clear its unwillingness to hold that "[Judkins's] belief that the '120 patent was, or would be, valid and enforceable was objectively unreasonable."  Id. at 765.  In rejecting HT's arguments that the Board's initial finding of abandonment and the finding in the Springs litigation to the same effect necessarily meant the '120 patent should not have issued, the court determined that "[t]he status of the '120 Patent is open to reasonable debate at this point.  As such, we cannot

conclude on this record that [Judkins] was objectively unreasonable in notifying the market of the alleged infringement of the '120 Patent." Id. at 766.  In short, the district court unquestionably evaluated Judkins's assertion of his patent rights from an objective standpoint and determined that Judkins had not acted in an objectively baseless way.

HT seizes on the district court's statement that HT "has provided no evidence regarding [Judkins's] subjective belief as to the validity or unenforceability of the '120 Patent." Id.  This observation does not mean, however, that the district court required HT to provide such evidence to establish bad faith.  This court held in Mikohn Gaming Corp. v. Acres Gaming, Inc. that bad faith may have both subjective and objective elements.  165 F.3d 891, 897 (Fed. Cir. 1998).  Indeed, once the court concludes that the claims of infringement are objectively baseless, the court must then consider whether the claims were made in subjective bad faith.  Cf. Prof'l Real Estate Investors, 508 U.S. at 60.  In sum, the district court applied the correct legal standard.

Finally, HT argues that the district court erred when it failed to require Judkins to explain his conduct during the prosecution of the '120 patent.  HT asserts that it has "established a prima facie case of intent which shifts the burden to Judkins to provide evidence showing Judkins lacks intent" to deceive—one of the two elements of inequitable conduct.  Cargill Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1363 (Fed. Cir. 2007).

HT's argument on this point draws on two of our cases upholding grants of summary judgment on the question of inequitable conduct by patent applicants, Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182 (Fed Cir. 1993), and Ferring B.V. v. Barr Laboratories, Inc., 437 F.3d 1181 (Fed. Cir. 2006).  In

<u>Paragon</u>, we upheld the district court's grant of summary judgment in favor of an alleged infringer, holding that the patent-in-suit was invalid under 35 U.S.C. § 102(b) and unenforceable because of inequitable conduct.  Paragon, the assignee of the patent, challenged the district court's finding on summary judgment of intent to deceive. <u>Paragon</u>, 984 F.2d at 1188-89.  We acknowledged that "our precedent urges caution in the grant of summary judgment respecting a defense of inequitable conduct" and that this outcome "ought to be, and can properly be, rare indeed."  <u>Id.</u> at 1190 (citing <u>Burlington Indus., Inc. v. Dayco Corp.</u>, 849 F.2d 1418, 1422 (Fed. Cir. 1988)). Nonetheless, we concluded that the district court could properly conclude that there was no genuine issue as to intent.  <u>Id.</u> at 1190-91.  Crucially, we concluded that the alleged infringer, KLM, had made out a prima facie case of intent, based not only on the patentee's failure to submit known, highly material information, but also based on its "affirmative act" of submitting deceptive and possibly false affidavits to the patent examiner, the affidavits' "misleading character, and the inability of the examiner to investigate the facts" to which they attested.  <u>Id.</u> at 1191.  We also upheld the inference of an intent to deceive based on the failure to disclose commercial, as opposed to experimental, sales outside section 102(b)'s grace period, noting that "unlike the applicant's failure to disclose, for example, a material patent reference, the examiner has no way of securing the information on his own."  <u>Id.</u> at 1193.

In <u>Paragon</u>, we concluded that because the defendant made out a prima facie case of inequitable conduct, the burden shifted to the plaintiff to come forward with evidence that "would require reassessment of the validity of the defense."  <u>Id.</u>  The possibility of a shifting burden of production (as distinguished from a shifting burden of

proof) does not assist HT in this case, because the district court did not abuse its discretion in declining to conclude that HT had established a prima facie case of inequitable conduct.  The evidence of inequitable conduct in <u>Paragon</u> was far stronger than in this case, both with respect to the materiality of the information not disclosed (which, unlike in this case, was not contested in <u>Paragon</u>) and intent to deceive. Indeed, in our discussion of this point in <u>Paragon</u>, we acknowledged that intent to mislead may not be inferred, without more, from the failure to disclose to the patent examiner known, highly material information.  <u>Id.</u> at 1191 (citing <u>Manville Sales Corp. v. Paramount Sys., Inc.</u>, 917 F.2d 544, 552 (Fed. Cir. 1990)).  To the contrary, we emphasized that the applicant's conduct went well beyond mere failure to disclose.

Similarly, in <u>Ferring</u>, we upheld the district court's grant of summary judgment on the question of inequitable conduct, which rested on an inference of intent to deceive; as in <u>Paragon</u>, the applicant had failed to disclose "significant past relationships" with scientists who submitted supporting declarations to the patent examiner.  <u>Ferring</u>, 437 F.3d at 1191-92; <u>cf.</u> <u>Pfizer Inc. v. Teva Pharms. USA, Inc.</u>, ___ F.3d ___, 2008 WL 613118, *11 (Fed. Cir. March 7, 2008) (materiality alone of references not disclosed to patent examiner was insufficient to establish intent to deceive where patentee offered credible explanation for failure to disclose).  These affiliations of ostensibly disinterested scientists were not otherwise known to the examiner—unlike the finding of the Northern District of Illinois in the Springs litigation, which appears to have been part of the record of the interference and subsequent litigation that ultimately went to the patent examiner who approved the '120 patent.

We also note that because the decisions below were grants of summary judgment, our decisions in Paragon and Ferring involved a less deferential standard of review than the abuse-of-discretion standard we must use here.  See Paragon, 984 F.2d at 1185 (citing Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1560 (Fed. Cir. 1991)); Ferring, 437 F.3d at 1187 (citing Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1362-63 (Fed. Cir. 2003).  But even if these cases have some bearing on this point of HT's appeal, the district court did not err when it failed to require Judkins to offer evidence to rebut HT's evidence of intent to deceive.

C.    Judkins's motion for attorney's fees and costs

Judkins has filed a motion for attorney's fees and costs in which he argues that HT's appeal is frivolous.  The court denied the motion on January 14, 2008, and we write further to explain that denial.  The thrust of Judkins's argument is that this court almost never reverses the denial of a preliminary injunction, except in cases based on errors of claim construction, and is especially deferential to district courts' determinations of the balance of harms and irreparable injury in this context.  HT should reasonably have known it could not prevail, according to Judkins.  Judkins also says that HT's real motivation in filing the appeal is to drive up his litigation costs.

HT counters that Judkins improperly argues this appeal is governed by a "de facto ban" on appeals by parties in HT's position.  HT also argues that it raised several issues of law that this court reviews de novo, rather than for abuse of discretion, making the appeal something less futile.

The court will grant a motion for fees and costs such as Judkins's only when an appeal is "clearly hopeless and unquestionably without any possible basis in fact or

law." Chemical Eng'g Corp. v. Marlo, 754 F.2d 331, 335 (Fed. Cir. 1984). Judkins's assertion that "[g]enerally, the Federal Circuit never" grants appeals such as this one does not get beyond the generic fact that HT's is an appeal from a denial of a preliminary injunction that does not involve claim construction. The district court's findings on irreparable injury and the balance of harms are reviewed for clear error, which means HT faced slim odds of prevailing. Slim is not none, however, and in any event Judkins's argument does not take into account HT's assertions of errors of law by the district court. Judkins has failed to show by reference to specific features of this appeal that it was "clearly hopeless."

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court denying appellant's motion for a preliminary injunction and deny Judkins's motion for attorney's fees and costs.

AFFIRMED.

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| FOBOHA GMBH and FOBOHA US, INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>GRAM TECHNOLOGY, INC. and JES GRAM, )<br><br>Defendants. ) | Civil Action No. 08C-0969<br><br>Judge John F. Grady<br>Magistrate Judge Martin C. Ashman |

## PLAINTIFFS' NOTIFICATION OF AFFILIATES

Pursuant to Federal Rule of Civil Procedure 7.1 and Northern District of Illinois Local Rule 3.2, Plaintiffs, Foboha GmbH and Foboha US, Inc., advise the Court that Foboha Holding AG owns more than 10% of each of Foboha GmbH and Foboha US, Inc.  Adval Tech Holding AG, in turn, owns more than 10% of Foboha Holding AG.

Respectfully submitted,

Dated: April 8, 2008                     By:     s/ Timothy P. Lucier

Gary M. Ropski
Jeffry M. Nichols
Timothy P. Lucier
BRINKS HOFER GILSON & LIONE
455 North Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, Illinois  60611-5599
Telephone: (312) 321-4200
Facsimile:  (312) 321-4299
*Attorneys for Plaintiffs*,
FOBOHA GMBH and FOBOHA US, INC.

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

PLAINTIFFS' NOTIFICATION OF AFFILIATES was served on this the 8th day of April,

2008, to the following attorneys of record, as follows:

**VIA ECF :**

Edward J. Chalfie, Esq.
Ladas & Parry LLP
224 S. Michigan Ave.
Suite 1600
Chicago, Illinois  60604

I declare under penalty of perjury that the foregoing is true and correct.  Executed at

Chicago, Illinois on April 8, 2008.

_____ s/ Timothy P. Lucier _____