**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FOBOHA GMBH and FOBOHA US, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GRAM TECHNOLOGY, INC. and JES ) <br> GRAM, ) <br> ) <br> Defendants. ) | Civil Action No. 08C-0969 <br><br> Judge John F. Grady <br> Magistrate Judge Martin C. Ashman |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS UNDER RULE 12(b)(6), FED. R. CIV. P.**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND .................................................................................................................2

III. ARGUMENT.......................................................................................................................5

    A. Plaintiffs' Complaint States a Valid Claim for Unfair Competition Under Section 43(a) of the Lanham Act. ...................................................................5

        1. Plaintiffs are not required to plead "bad faith," but even assuming this element is required, it has been adequately pled. ...........................................................................................................5

        2. Plaintiffs have also adequately pled "commercial advertising or promotion." ...........................................................................7

    B. Plaintiffs' Complaint Also States a Valid Claim for Tortious Interference With Prospective Economic Advantage. ..............................................9

        1. Defendants' Motion misrepresents the pleading standards for Plaintiffs' tortious interference claim. .......................................................9

        2. Defendants' argument concerning the "competitor privilege" relates to a potential defense, not whether Plaintiffs' Complaint adequately states a claim. ........................................10

    C. Plaintiffs' Unfair Competition Claims Meet the Requirements of Rule 9(b), FED. R. CIV. P. .......................................................................................11

IV. CONCLUSION.................................................................................................................15

I.      INTRODUCTION

This action stems from Defendants' repeated, wrongful assertions that Plaintiffs infringed or were infringing patent rights *that did not exist*.  These representations were false, malicious, and damaging to Plaintiffs' business.

Plaintiffs' Complaint contains four claims based on these unlawful activities.  These claims are all well-pled, but Defendants' Motion to Dismiss nonetheless raises five challenges to their sufficiency.  None of these challenges has merit.

First, Defendants argue that Plaintiffs must plead and prove "bad faith" as part of their Lanham Act claim.  (*See* Defendants' Memorandum in Support of Their Motion to Dismiss ("Defs.' Memo.") at 4).  The "bad faith" requirement, however, only applies in cases involving the assertion of *existing* patent rights, not here where Plaintiffs' Complaint is based on the assertion of patent rights *that did not exist*.  In any case, even if the "bad faith" requirement applies, Plaintiffs adequately pled this element.  (*See, e.g.,* Complaint at ¶ 52).

Second, Defendants argue that Plaintiffs have also not sufficiently pled "commercial advertising or promotion" as part of their Lanham Act claim.  (*See* Defs.' Memo. at 5).  Defendants' Motion, however, focuses almost exclusively on a single letter and ignores the significant other commercial activities pled in the Complaint, including Defendants' circulation of false statements in the industry, Defendants' misrepresentations at trade shows, and Defendants' false publications on their web site.  These activities are each sufficient to meet the pleading requirements for "commercial advertising or promotion."

Third, Defendants argue that Plaintiffs have not sufficiently pled a "business expectancy with a specific third party" as part of their tortious interference claim.  (*See id.* at 6).  This alleged requirement, however, was squarely rejected by the Seventh Circuit in *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998) ("The Federal Rules do not require that [the] complaint allege

the specific third party or class of third parties with whom he claims to have had a valid business expectancy.").

Fourth, Defendants argue that the "competitor privilege" applies to Plaintiffs' tortious interference claim. (*See* Defs.' Memo. at 9-10). The "privilege" is a defense, however, not a pleading requirement. Even if the defense could be considered at this stage, moreover, there are two insurmountable reasons why it does not apply. Plaintiffs specifically pled that Defendants are *not* a competitor, which must be accepted as true at this stage. (*See* Complaint at ¶¶ 15 and 16). In addition, Plaintiffs specifically pled that Defendants' activities were "malicious," among other things, which also renders the "privilege" inapplicable. (*See id.* at ¶ 76).

Finally, Defendants argue that Plaintiffs' unfair competition claims in Count I (Lanham Act), Count II (IUDTPA), and Count IV (common law) were not pled with particularity, as required by Rule 9(b), FED. R. CIV. P. (*See* Defs.' Memo. at 2). The Complaint, however, thoroughly sets forth "who, what, when, and where" in careful detail. These well-pled facts are simply ignored in Defendants' Motion. Defendants' Motion should be denied in its entirety.

## II.    BACKGROUND

Starting back in 2004, Defendants began making false and misleading "comments and statements of infringement in the industry." (*See* Complaint at ¶¶ 23 and 24). Defendants specifically asserted, for example, that Plaintiffs were infringing one of its patent applications, U.S. Patent Application Serial No. 10/415,281. (*See id.* at ¶ 23 and Ex. 4).[1] According to established law, however, there can be no infringement of a patent application because no patent rights exist prior to issuance of the patent. *See GAF Building Materials Corp. v. Elk Corp. of*

---

[1] Exhibits with number designations – specifically Exhibits 1-10 – are attached to Plaintiffs' Complaint. Exhibits with letter designations – specifically Exhibits A-K – are attached to this brief.

*Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Patent rights are created only upon the formal issuance of the patent"). Indeed, similar infringement assertions have been held to constitute unfair competition. *See Gardiner v. Gendel*, 727 F.Supp. 799, 801, 805 (E.D.N.Y. 1989) (holding that the defendant committed unfair competition based on letters alleging infringement of patent rights that did not exist).

By 2006, Defendants' dissemination of such false information to the industry forced Plaintiffs to issue a second press release in an attempt to correct these misrepresentations. (*See* Complaint at ¶ 23 and Ex. 4). Plaintiffs' press release states:

> We are aware that Mr. Jes Gram of Gram Technology, Inc. has asserted the claims of pending U.S. patent application U.S. Ser. No. 10/415,281 ("the Gram Application") against several exhibitors at NPE 2006, including Foboha GmbH Formenbau ("Foboha") and Ferromatik / Cincinnati Milacron ("Ferromatik"). Following is some information related to these assertions: There can be no infringement of the Gram Application because: the Gram Application is still pending and has not matured into an enforceable U.S. Patent.

(*See* Complaint at Ex. 4).

Eventually, on July 25, 2006, Defendants' patent application matured into a patent: U.S. Patent No. 7,081,222 ("the '222 patent"). (*See id.* at ¶ 28 and Ex. 5). The following day, however, Plaintiffs filed a Request for Reexamination of the '222 patent. (*See id.* at ¶ 29). A Reexamination proceeding is a process in which third parties, like Plaintiffs, can ask the U.S. Patent & Trademark Office to review the validity/invalidity of claims in an issued patent in view of prior art references identified by the third parties. *See* 37 C.F.R. § 1.501 *et. seq.* Plaintiffs' Request for Reexamination identified German Patent DE 4123690A1 ("the German reference") as invalidating prior art. (*See* Complaint at ¶¶ 27 and 29).

The Patent Office granted Plaintiffs' Request and then rejected all ten claims in the '222 patent. (*See id.* at ¶¶ 30 and 31). According to the Patent Office, the claims were not patentable in view of the German reference. (*See id.* at ¶ 31). In response, on June 22, 2007, Defendants

3

conceded the claims were not patentable by substantially amending the claims to, as Defendants put it, "avoid" the German reference. (*See id.* at ¶¶ 32-34, and Ex. 8 at 10 of 12).

As of June 22, 2007, therefore, none of the original claims from the '222 patent were enforceable. "The original claims are dead." *See Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984) ("An original patent cannot be infringed once a reissue patent has issued, for the original patent is surrendered.").[2] Knowing this, however, Defendants issued a false and misleading press release on their web site, www.gramtechnology.com, stating that "the United States Patent and Trademark Office (USPTO) has *confirmed the patentability of the 10 original claims* of the '222 patent, as applied to mechanical in-mold assembly processes." (*See* Complaint at ¶ 37 and Ex. 9).[3]

Defendants' amended claims, furthermore, are likewise not enforceable. According to 37 C.F.R. § 1.530(k), "amendments will not be effective until the reexamination certificate is issued and published." A "reexamination certificate," which "set[s] forth the results" of the reexamination and "the content of the [resulting] patent," is only issued at the conclusion of the reexamination proceedings. *See* 37 C.F.R. § 1.570(a). Here, no reexamination certificate has been issued with respect to the '222 patent as of the filing date of this brief.

As a result, since June 22, 2007, Defendants have had no enforceable rights in the '222 patent. *See, e.g., Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1579-81 (Fed. Cir. 1987) (affirming lower court's decision "that, because no asserted claim in the reexamined patent was without substantive change from any claim in the original patent, [the patentee] had no right to

---

[2] The *Seattle Box* opinion dealt with a reissue patent, rather than a reexamined patent. This distinction is without a difference, however, because 35 U.S.C. § 307(b) states that reexamined patents and reissue patents are treated the same for purposes of the issues considered in the *Seattle Box* opinion.

[3] All emphasis is added in this brief unless otherwise noted.

4

enforce those reexamined claims before the date of the reexamination certificate."). This lack of rights, however, has not stopped Defendants.

Defendants have continued to falsely assert that Plaintiffs are currently infringing their patent rights when, in fact, they have none. On or about December 18, 2007, Defendants met with one of Plaintiffs' potential customers, Stull Technologies, and misrepresented to them that Plaintiffs' "Double Cube Mold" technology infringes the '222 patent. (*See* Complaint at ¶¶ 40-42). Defendants also misrepresented that Stull's use of this technology would be a further infringement and they demanded a royalty. (*See id.* at ¶¶ 41 and 42). To prevent these damaging and false misrepresentations from continuing any further, Plaintiffs filed the present action.

## III.     ARGUMENT

### A.     Plaintiffs' Complaint States a Valid Claim for Unfair Competition Under Section 43(a) of the Lanham Act.

#### 1.     Plaintiffs are not required to plead "bad faith," but even assuming this element is required, it has been adequately pled.

Defendants' assertion that Plaintiffs must plead and prove "bad faith" is incorrect. This requirement is necessary only for claims involving a patentee's assertion of *existing* patent rights, as illustrated by the cases cited by Defendants. *See, e.g., Judkins v. HT Window Fashion Corp.*, No. 2007-1434, 2008 WL 930501, at *3 (Fed. Cir. April 8, 2008) ("To prevail on an unfair-competition claim under section 43(a) of the Lanham Act stemming from a patentee's marketplace activity *in support of his patent*, the claimant must first establish that the activity was undertaken in bad faith."). Plaintiffs' claim, however, is different. Plaintiffs allege that Defendants have repeatedly misrepresented that Plaintiffs infringed or were infringing patent rights *that did not exist*. Stated another way, Defendants lacked enforceable patent rights, yet they continuously misrepresented that Plaintiffs products were *currently* covered by their patent rights. This distinction is significant and renders the "bad faith" requirement inapplicable here.

5

This case is thus like *M-3 & Associates, Inc. v. Cargo Systems Inc.*, No. 3:99-CV-547 AS, 2004 WL 834690, at *1-3 (N.D. Ind. March 18, 2004) (Ex. A).  In *M-3*, the Court considered a Lanham Act claim concerning a patentee's continued use of the words "patented" and "Patent No. 5,768,828" in connection with its products *after* the patent was held to be invalid based on prior art (i.e. after the patent rights were found not to exist).  *See id.* at *1.  The parties disputed whether the Federal Circuit's "*Zenith* line of cases" (which impose the "bad faith" requirement) applied to the claim, or whether "the law of the Seventh Circuit" (which does not impose such a requirement) should apply.  *See id.* at *2.  The Court held that "Seventh Circuit [law] should apply," because "the court has already determined that the '828 patent is invalid." *Id.*; *see also* Ex. B (district court opinion adopting magistrate's recommendation in *M-3*).  Similarly here, the "bad faith" requirement is misplaced because, like the patentee in *M-3*, Defendants' misrepresentations concern patent rights that did not exist.

Even assuming for argument's sake, however, that the "bad faith" requirement does apply to Plaintiffs' Lanham Act claim, the claim remains sufficient because "bad faith" was adequately pled.  Plaintiffs' Complaint states, for example, that "Defendants have knowingly misrepresented the scope and enforceability of their patents rights . . . and have falsely alleged that Foboha's Double Cube Molds infringes Defendants' allegedly patented technology." (*See* Complaint at ¶ 52; *see also id.* at ¶¶ 2, 55, and 56).  According to the Federal Circuit, such conduct "[o]bviously" makes out a "clear case of bad faith."  *See Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999) ("Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out.").[4]

---

[4] *See also Buztronics, Inc. v. Theory3, Inc.*, No. 104CV1485, 2005 WL 1865512, at *2-5 (S.D.

### 2.  Plaintiffs have also adequately pled "commercial advertising or promotion."

Plaintiffs have also adequately pled "commercial advertising or promotion" under Section 43(a) of the Lanham Act. As discussed above, Plaintiffs' Complaint describes a continuum of commercial efforts by Defendants to circulate false information concerning Plaintiffs' alleged infringement. (*See, e.g.,* Complaint at ¶ 52 ("Through *a pattern of publications and direct communications*, Defendants have knowingly misrepresented the scope and enforceability of their patent rights.")).

Starting in 2004, Defendants began circulating "comments and statements of infringement in the industry." (*See id.* at ¶¶ 23 and 24). At the "NPE 2006" tradeshow in 2006, for example, Defendants falsely represented to customers and potential customers that Plaintiffs infringed Defendants' patent application, as reflected in Plaintiffs' corrective press release issued by them at the trade show. (*See id.* at ¶ 23 and Ex. 4 ("We are aware that Mr. Jes Gram of Gram Technology, Inc. has asserted the claims of pending U.S. patent application U.S. Ser. No. 10/415,281 ('the Gram Application') against several exhibitors at NPE 2006.")). These activities constitute "commercial advertising or promotion." *See, e.g., Enesco Group Inc. v. Jim Shore Designs, Inc.*, No. 05C-4371, 2005 WL 3334436, at *4 (N.D. Ill. Dec. 6, 2005) (holding that "representations to customers at trade shows" were sufficient to constitute "commercial advertising or promotion") (Ex. C); *Logan Graphic Products, Inc. v. Textus USA, Inc.*, No. 02C-1823, 2002 WL 31507174, at *3 (N.D. Ill. Nov. 8, 2002) (holding that allegation of false

---

Ind. Aug. 5, 2005) (denying Rule 12(b)(6) motion to dismiss Lanham Act claim and holding that "bad faith" was adequately pled) (Ex. I); *Eazypower Corp. v. Alden Corp.*, No. 03C-3164, 2003 WL 22859492, at *3 (N.D. Ill. Dec. 2, 2003) (same) (Ex. J); *Mitsubishi Electric Corp. v. IMS Tech., Inc.*, No. 96C-0499, 1997 WL 630187, at *8 (N.D. Ill. Sept. 30, 1997) (same) (Ex. K).

7

statements "communicated . . . to 'retailers and distributors throughout the United States'" was "sufficient to withstand" the motion to dismiss) (Ex. D).

Defendants' campaign, moreover, was not limited to trade shows and direct contacts. Defendants also published false and misleading information concerning their alleged patent rights on their web site: www.gramtechnology.com. This site "allow[ed] consumers nationwide . . . to actively review Defendants' services and allegedly patented technology via the Internet." (*See* Complaint at ¶ 21). There, for example, Defendants misrepresented that, during the reexamination proceeding for the '222 patent, the Patent Office "confirmed the patentability of the 10 original claims," when, in truth, the original claims had been surrendered through amendment. (*See id.* at ¶ 37 and Ex. 9). These activities also constitute "commercial advertising or promotion." *See M-3*, 2004 WL 834690, at *3 (holding that patentee's web site constituted "commercial advertisements which fall under the scope of the Lanham Act."). Indeed, Defendants' Motion acknowledges that their web site "could arguably be considered 'commercial advertising or promotion.'" (*See* Defs.' Memo. at 5).

Still further, Defendants circulated a letter with misrepresentations to Adval Tech Holding, and they traveled to New Jersey to meet with Stull Technologies (a potential customer) where Defendants again made several damaging misrepresentations concerning Plaintiffs' alleged infringement. (*See* Complaint at ¶¶ 38-47). Defendants' misrepresentations to Stull, in particular, were accompanied by royalty demands. (*See id.* at ¶¶ 39, 42, 44). These activities are all described in the Complaint and must be accepted as true at this stage. *See, e.g., Travel All Over The World, Inc. v. The Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996).

Defendants' Motion focuses almost exclusively on Defendants' letter to Adval Tech and argues that it is "not commercial advertising or promotion" because it is only a letter. (*See*

8

Defs.' Memo. at 5). Even if true, however, this conclusion is immaterial because Plaintiffs have pled significant other commercial activities in the Complaint, including Defendants' circulation of false statements in the industry, Defendants' misrepresentations at trade shows, and Defendants' false publications on their web site. All of these activities are ignored in Defendants' Motion to Dismiss. Any of them, however, is sufficient to meet the pleading requirements for "commercial advertising or promotion." *See, e.g., Enesco Group*, 2005 WL 3334436, at *4; *M-3*, 2004 WL 834690, at *3; *Logan*, 2002 WL 31507174, at *3.

> **B. Plaintiffs' Complaint Also States a Valid Claim for Tortious Interference With Prospective Economic Advantage.**
>
> > **1. Defendants' Motion misrepresents the pleading standards for Plaintiffs' tortious interference claim.**

Defendants' Motion misrepresents the pleading standards for Plaintiffs' tortious interference claim. Relying on Illinois court decisions, such as *Schuler v. Abbott Laboratories*, 265 Ill.App.3d 991 (Ill. App. 1993), Defendants argue that Plaintiffs "must allege a business expectancy with a specific third party." (*See* Defs.' Memo. at 6). This argument, however, was squarely rejected by the Seventh Circuit in *Cook v. Winfrey*, 141 F.3d 322 (7th Cir. 1998).

In *Cook*, the Seventh Circuit considered the sufficiency of a claim for tortious interference with prospective economic advantage. The claim had been dismissed by the district court for failure to state a claim under Rule 12(b)(6):

> The district court dismissed this count because it read Illinois court decisions as requiring that the plaintiff allege both "a business expectancy with a specific third party" and "action by the interfering party directed towards the party with whom the plaintiff expects to do business." *Schuler v. Abbott Laboratories*, 265 Ill.App.3d 991 . . . Because [the plaintiff] did not name any particular third party with whom he had a reasonable expectation of a business relationship, or toward whom [the defendant] directed her interfering actions, the court concluded that the complaint was inadequate.

*See id.* at 327-28. The Seventh Circuit reversed because "this entire argument strays rather far afield from the minimum requirements of federal notice pleading." *Id.* at 328. According to the

9

Court, "[t]he Federal Rules do not require that [the] complaint allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy." *Id.*; *see also Triple Canopy, Inc. v. Moore*, No. 04C-3265, 2005 WL 1629768, at *8 (N.D. Ill. July 1, 2005) (applying *Cook* and denying motion to dismiss tortious interference claim) (Ex. E).

Consequently, Defendants' arguments concerning the alleged inadequacies in Plaintiffs' tortious interference claim should be rejected, just like the courts did in *Cook* and *Triple Canopy*. Applying the correct standards, there is no doubt that Plaintiffs' claim is sufficient.[5] *Compare, e.g., Cook*, 141 F.3d at 328 (holding that the following allegation was sufficient to sustain a claim: "[Plaintiff] improperly interfered with his 'ability to enter into contracts or business relationships with third parties interested in purchasing the rights to publication of his experiences.'"), *with* Complaint at ¶ 74 ("Defendants engaged in the aforementioned acts with the specific intention of disrupting the foregoing relationships and that, as a proximate result thereof, Foboha's relationships have in fact been disrupted.").

> 2. **Defendants' argument concerning the "competitor privilege" relates to a potential defense, not whether Plaintiffs' Complaint adequately states a claim.**

Defendants' "argument that [they were] privileged to interfere with Plaintiff[s'] business relationship is an affirmative defense." *See P.H. Int'l Trading Co. v. Christia Confezioni S.P.A.*, No. 04C-0903, 2005 WL 2420377, at *12 (N.D. Ill. Sept. 29, 2005) (rejecting "competitor privilege" argument and denying motion to dismiss tortious interference claim) (Ex. F). "Affirmative defenses like privilege are not properly raised in a motion to dismiss." *Id.*

---

[5] Plaintiffs, in any event, have identified Stull Technologies as a specific third party with respect to their tortious interference claim. (*See, e.g.,* Complaint at ¶ 73). Thus, Plaintiffs' claim is sufficient even under Defendants' erroneous pleading standard.

10

Accordingly, Defendants' arguments concerning the "competitor privilege" are out of place and should be rejected. *See id.*

Moreover, even if the defense could be properly considered at the pleading stage, there are two insurmountable reasons why it does not apply. First, Plaintiffs have specifically pled that "Defendants are not competitors of Foboha GmbH or of Foboha US, Inc.," nor are they "a competitor of Foboha's customers." (*See* Complaint at ¶¶ 15 and 16). At this stage, these allegations must be accepted as true, and they preclude the application of the privilege.

Second, the "competitor privilege" is not available, in any event, when the defendant has acted in bad faith. *See, e.g., Logan*, 2002 WL 31507174, at *5 (holding that allegation of "'malicious' activities" rendered the "competitor privilege" "[in]applicable at this stage of the litigation."). Here, Plaintiffs specifically pled that "Defendants acted maliciously [and] oppressively." (*See* Complaint at ¶ 76). These allegations thus likewise preclude the application of the privilege. *See Logan*, 2002 WL 31507174, at *5 (denying motion to dismiss).

### C. Plaintiffs' Unfair Competition Claims Meet the Requirements of Rule 9(b), FED. R. CIV. P.

Defendants' final challenge to the Complaint concerns whether Plaintiffs' unfair competition claims in Count I (Lanham Act), Count II (IUDTPA), and Count IV (common law) are pled with particularity under Rule 9(b), FED. R. CIV. P. It is not entirely clear, however, whether Rule 9 applies to these claims, as numerous courts have applied Rule 8's more lenient standard to similar claims. *See, e.g., Buztronics*, 2005 WL 1865512, at *2-4 (denying Rule 12(b)(6) motion to dismiss Lanham Act claim); *Logan*, 2002 WL 31507174, at *3-5 (denying Rule 12(b)(6) motion to dismiss Lanham Act and IUDTPA claims); *Brandt Consolidated, Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 170 (C.D. Ill. 1992) (denying Rule 12(b)(6) motion to dismiss Lanham Act and unfair competition claims).

11

In any case, Plaintiffs' Complaint is sufficient because it meets both standards. Defendants argue that the Complaint "only vaguely alleg[es] wrongs unsupported by the 'who, what, when and where' required by [the] heightened standard" of Rule 9(b), but they simply ignore the well-pled facts described in Plaintiffs' Complaint. (*See* Defs.' Memo. at 2). The following chart illustrates, for example, that all of these details are provided in the Complaint.

| WHO | WHAT | WHEN | WHERE |
|---|---|---|---|
| Defendants. (¶¶ 13, 23). | "Defendants' comments and statements of infringement in the industry required Foboha to issue press releases informing the industry about the lack of patent rights possessed by GRAM with regard to double cube mold technology. (Exhibit 3 and Exhibit 4)." (¶ 23). The "accusations of infringement" included "foreign patents and U.S. patent applications." (¶ 24). | "In 2004 and continuing through 2006." (¶ 23). Press releases were issued on or about October 20, 2004 and June 19, 2006. (*See* ¶¶ 23, 26, and Exs. 3 and 4). | Defendants' "comments and statements" were made to the "industry." (¶ 23). The October 20, 2004 press release was issued in Haslach, Germany. (*See* Ex. 3). The June 19, 2006 press release was issued in Chicago, Illinois in connection with the 2006 NPE trade show. (*See* ¶¶ 23 and 26, and Ex. 4). |
| Defendants. (¶¶ 13, 26). | "[P]rior to the issuance of a valid patent based upon U.S. patent application U.S. Ser. No. 10/415,281, Defendants, with their Chicago, Illinois based attorneys, then contacted Foboha at the conference and demanded that Foboha take a license for Defendants' patented technology." (¶ 26). | "On or about June 19, 2006." (¶ 26). | "[T]he 2006 National Plastics Expo in Chicago, Illinois." (¶ 26). |
| Defendants. (¶¶ 13, 37). | "Defendants published on their website, www.gramtechnology.com, that Defendants successfully defended reexamination proceedings involving the '222 patent and that: 'In the reexamination, requested by Foboha GmbH's attorneys, the | "On or about December 16, 2007." (¶ 37). | "www.gramtechnology.com." (¶ 37). |

12

| WHO | WHAT | WHEN | WHERE |
|---|---|---|---|
|  | United States Patent and Trademark Office (USPTO) has confirmed the patentability of the 10 original claims of the '222 patent, as applied to mechanical in-mold assembly processes.' (Exhibit 9).  In their December 16, 2007 press release, Defendants failed to include the amendments that substantially changed the scope of the claims, made to overcome the prior art rejections." (¶ 37). |  |  |
| Defendants. (¶¶ 13, 39). | "Despite the lack of enforceable patent rights, and the acknowledgement that Defendants were required to amend all the issued claims, Defendants advised the Adval [Tech] Board in the December 21, 2007 letter to pay 'urgent attention' to a timeline of events prepared by Defendants related to Defendants' patent holdings.  The memorandum advises the Board that 'Unilever has settled with Gram, and others might consider doing the same in view of the IP situation and the events that has taken place in the past.' (Exhibit 10).  In fact, Unilever has never settled with Gram relating to the '222 patent." (¶ 39). | "December 21, 2007." (*See* ¶¶ 38, 39, and Ex. 10). | The letter was sent to Adval Tech in Switzerland from the United States. (*See* ¶¶ 38, 39, and Ex. 10). |
| Defendants. (¶¶ 13, 40, 41). | "Despite not having enforceable patent claims in the '222 patent at the time, Gram told Mr. Russo that he had a patent covering Foboha's Double Cube Mold and that any use by Stull Technologies of Foboha's Double Cube Mold would be an infringement of Defendants' | "[O]n or about December 18, 2007." (¶ 40). | "New Jersey."  (¶ 40). |

13

| WHO | WHAT | WHEN | WHERE |
|---|---|---|---|
| | '222 patent." (¶ 41). | | |
| Defendants. (¶¶ 13, 40, 42). | "Gram told Mr. Russo that 'there was a lot of infringement going on' and that Stull Technologies should pay Defendants a royalty for infringement of the '222 patent."  (¶ 42). | "[O]n or about December 18, 2007."  (¶ 40). | "New Jersey."  (¶ 40). |
| Defendants. (¶¶ 13, 40, 44). | "Gram also stated that as a result of the infringement of the '222 patent by the Double Cube Molds, Foboha owed the Defendants money."  (¶ 44). | "[O]n or about December 18, 2007."  (¶ 40). | "New Jersey."  (¶ 40). |
| Defendants. (¶¶ 13, 40, 45). | "Gram told Mr. Russo that is was his 'mission' to pursue Stull Technologies and its customers to seek 'solutions' for current infringement."  (¶ 45). | "[O]n or about December 18, 2007."  (¶ 40). | "New Jersey."  (¶ 40). |
| Defendants. (¶¶ 13, 40, 46). | "Mr. Russo was deceived into believing that Defendants had enforceable rights in his '222 patent at the time of the conversation and that the Double Cube Mold could have infringed those alleged patent rights."  (¶ 46). | "[O]n or about December 18, 2007."  (¶ 40). | "New Jersey."  (¶ 40). |
| Defendants. (¶¶ 13, 50). | "Defendants have made other license offers to other companies for Defendants' allegedly patented technology, including contacting Electroform Company, Inc."  (¶ 50). | After "June 22, 2007."  (¶ 36). | "Rockford, Illinois."  (¶ 50). |

Even the authority cited by Defendants recognizes that a pleading like Plaintiffs' Complaint "satisfies the particularity pleading requirements."  *See Gold v. Golden G.T., LLC*, No. 05C-0288, 2005 WL 2465815, at *6 (N.D. Ill. Oct. 4, 2005) (holding that Complaint describing "who, what, when, and where" was sufficient under Rule 9(b)) (Ex. G); *see also Hot*

14

*Wax, Inc. v. Grace-Lee Prods., Inc.*, No. 97C-6882, 1998 WL 664945, at *3-4 (N.D. Ill. Sept. 15, 1998) (denying motion to dismiss Lanham Act claim because claim was sufficient under Rule 9(b)) (Ex. H). Thus, Plaintiffs' Complaint is more than sufficient, regardless of whether Rule 8 or Rule 9 is applied.

## IV.    CONCLUSION

Defendants' Motion should be denied. Each of Plaintiffs' claims was more than sufficiently pled.

Respectfully submitted,

Dated: May 7, 2008                    By:    s/ Jeffry M. Nichols

Gary M. Ropski
Jeffry M. Nichols
Timothy P. Lucier
BRINKS HOFER GILSON & LIONE
455 North Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, Illinois 60611-5599
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

*Attorneys for Plaintiffs*,
FOBOHA GMBH and FOBOHA US, INC.

**PROOF OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6), FED. R. CIV. P. was served on this the 7th day of May, 2008, to the following attorneys of record, as follows:

> **VIA ECF:**
>
> Edward J. Chalfie, Esq.
> Ladas & Parry LLP
> 224 S. Michigan Ave.
> Suite 1600
> Chicago, Illinois 60604

I declare under penalty of perjury that the foregoing is true and correct. Executed at Chicago, Illinois on May 7, 2008.

                                                                       s/ Jeffry M. Nichols