Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 834690 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 834690)**

M-3 & Associates, Inc. v. Cargo Systems Inc.
N.D.Ind.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Indiana, South Bend Division.
M-3 & ASSOCIATES, INC., Plaintiff,
v.
CARGO SYSTEMS INC., and Preferred Finishing Inc., Defendants.
**No. 3:99-CV-547 AS.**

Filed Sept. 22, 1999.
March 18, 2004.

represented by Ryan M Fountain, Mishawaka, IN, Lead Attorney, Attorney to be Noticed, for M-3 & Associates Inc, Plaintiff.
represented by Brent E Inabnit, Sopko Nussbaum and Inabnit, South Bend, IN, Lead Attorney, Attorney to be Noticed, R Tracy Crump, New Carlisle, IN, Lead Attorney, Attorney to be Noticed, for Cargo Systems Inc, Defendant.
represented by Brent E Inabnit, R Tracy Crump, (See above for address), Lead Attorney, Attorney to be Noticed, for Preferred Finishing Inc, Defendant.
represented by Brent E Inabnit, R Tracy Crump, (See above for address), Lead Attorney, Attorney to be Noticed, for Preferred Finishing Inc, Counter Claimant.
represented by Ryan M Fountain, (See above for address), Lead Attorney, Attorney to be Noticed, for M-3 & Associates Inc, Counter Defendant.
represented by Brent E Inabnit, R Tracy Crump, (See above for address), Lead Attorney, Attorney to be Noticed, for Cargo Systems Inc, Counter Claimant.
represented by Ryan M Fountain, (See above for address), Lead Attorney, Attorney to be Noticed, for M-3 & Associates Inc, Counter Defendant.
represented by Ryan M Fountain, (See above for address), Lead Attorney, Attorney to be Noticed, for M-3 & Associates Inc, Counter Claimant.
represented by Brent E Inabnit, R Tracy Crump, (See above for address), Lead Attorney, Attorney to be Noticed, for Cargo Systems Inc, Counter Defendant.

REPORT AND RECOMMENDATION

NUECHTERLEIN, Magistrate J.
**\*1** This case arises out of a patent infringement claim brought by Plaintiff, M-3 Associates, Inc. ("M-3"), against Defendant, Cargo Systems, Inc. ("Cargo"), on September 22, 1999, and a countersuit by Cargo against M-3 for alleged state and federal antitrust violations, false advertising, and false marking. Following final judgment and appeal, on December 1, 2003, Cargo filed a motion for partial summary judgment [Doc. No. 111] on Counts III and IV of its counterclaim and on M-3's claims of bad faith litigation and abuse of process. For the following reasons, this Court RECOMMENDS that Cargo's motion be GRANTED.

I. RELEVANT FACTS

M-3 is an Indiana corporation that produces and sells single and dual torsion spring counterbalances for ramp door cargo trailers. Cargo, also an Indiana corporation, manufactures a similar product. Both companies are direct competitors with each other.

In May 1996, M-3 filed a patent application with the United States Patent Office for a dual spring counterbalanced system. On June 23, 1998, M-3 obtained U.S. Patent No. 5,768,828 (" '828 patent") for its system. Following receipt of its patent, M-3 filed a complaint against Cargo, alleging patent infringement of the '828 patent on September 22, 1999. In essence, M-3's complaint alleged that Cargo made, used, or sold dual spring counterbalanced door systems which embodied and infringed the '828 patent. In response to M-3's complaint, on November 11, 1999, Cargo filed counterclaims alleging state and federal anti-trust violations by M-3. On August 11, 2000, the court ruled that the '828 patent was invalid on the basis of prior art. The

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 834690 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 834690)**

Page 2

Federal Circuit Court of Appeals upheld the court's decision on April 2, 2002, and the Supreme Court denied *cert.* in November 2002.

Following the appeal, on April 24, 2003, Cargo amended its counterclaim asserting claims of false advertising under the Lanham Act and false marking for M-3's continued use of the '828 patent reference in advertising M-3's dual spring counterbalanced system. M-3 had continued to use the words "patented" and "Patent No. 5,768,828" when depicting its dual spring counterbalanced system on its website, in product catalogs, and in a June 2002 magazine advertisement, after the court found the patent invalid. On June 2, 2002, M-3 asserted counterclaims of bad faith litigation and abuse of process against Cargo.

On December 1, 2003, Cargo moved for partial summary judgment on its counterclaims for Count III, false advertising, Count IV, false marking, and on M-3's claims of bad faith and abuse of process. This Court has jurisdiction to decide this issue pursuant to 28 U.S.C. 636(b)(1)(B) and its referral order.

II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lawson v. CSX Transp., Inc .,* 245 F.3d 916, 922 (7th Cir.2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party.*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *King v. Preferred Technical Group,* 166 F.3d 887, 890 (7th Cir.1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett,* 477 U.S. 317, 322-23 (1986); *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1088 (7th Cir.2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Services Co.,* 391 U.S. 253, 289 (1968)).

III. CARGO'S FALSE ADVERTISING CLAIM

**\*2** Cargo asserts that M-3 falsely advertised M-3's dual spring counterbalanced system by continuing to use the patent references in its advertisements following the district court's judgment of invalidity, violating the Lanham Act, 15 U.S.C. § 1125(a).

A. *Choice of Law*

While this Court must apply Federal Circuit law to patent claims, it must apply Seventh Circuit precedent to non-patent issues. *Midwest Industries, Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359 (Fed.Cir.1999), *overruled on other grounds,TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23 (2001).*See alsoFPC Corp. v. Uniplast, Inc.,* 964 F.Supp. 1212, 1214-15 (N.D.Ill.1997) (stating that, in deciding cases involving Lanham Act violations, the Federal Circuit would apply the regional circuit's law). M-3 relying on the *Zenith* line of cases, counters this assertion, and urges this Court to follow Federal Circuit precedent. In *Zenith,* the Federal Circuit held that Federal Circuit law applies in false advertising cases when the claim is premised on commercial statements that allege patent infringement of the advertiser's patent. *Zenith Electronics Corp. v. Exzec, Inc.,* 182 F.3d 1340 (Fed.Cir.1999). Similarly, in *Midwest,* the court held that it is equally important to apply its construction of patent law to the questions of whether

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00969   Document 26-2   Filed 05/07/2008   Page 3 of 9

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 834690 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 834690)**

and to what extent patent law preempts or conflicts with other causes of action as well as in cases where the claim pertains to patent law. *Midwest,* 175 F.3d at 1360.

The present case, however, is distinguishable from the cases M-3 cites. In both *Zenith* and *Midwest,* the courts examined statements from an advertiser concerning an *alleged* patent infringement. In addition to false advertising claims, the cases required application of Federal Circuit law to first determine whether the patent at issue was valid or infringed upon, as well as a determination of Lanham Act issues. In the present case, however, the court has already determined that the '828 patent is invalid, leaving only the false advertising and false marking claims which are severable from each another. Therefore, the law of the Seventh Circuit should apply to the false advertising claim in this case because M-3's false advertising bears no relation to the patent's validity or infringement. Furthermore, Federal Circuit law is not applicable because the issues of false advertising and false marking are severable, there are no questions on the validity or infringement of the patent, and there are no questions regarding conflicts or preemption.

B. *M-3 Falsely Advertised its Dual Spring Counterbalance System*

False advertising is governed by section 43 of the Lanham Act, codified in 15 U.S.C. § 1125(a), which states:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

*3 ...

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To establish a false advertising claim, Cargo must prove five elements: (1) a false statement of fact by M-3 in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) M-3 caused its false statement to enter interstate commerce; and (5) Cargo has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to M-3 or by a loss of goodwill associated with its products. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir.1999).

1. *M-3 made a false statement in a commercial advertisement*

M-3's advertising materials including its website, magazine advertisements, and marketing catalog continued to display references to Patent '828 after the court declared the patent invalid. Cargo contends that the continued use of the patent number and the reference to patented products constitutes a false statement under the Lanham Act.

a. *M-3's statements were commercial advertisements*

Commercial advertisements are promotions to various anonymous recipients. *Derby Industries, Inc. v. Chestnut Ridge Foam, Inc.,* 202 F.Supp.2d 818, 822 (N.D.Ind.2002). M-3's marketing catalog, website, and trade magazine are various forms of promotions to anonymous recipients; and thus, are commercial advertisements which fall under the scope of the Lanham Act.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 834690 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 834690)**

Page 4

b. *M-3's statements are literally false*

False statements fall into one of two categories: those which are literally false as a factual matter; and those which may be literally true or ambiguous but are misleading in context or likely to deceive customers. *Hot Wax,* 191 F.3d at 820. The determination of whether a statement is literally false is crucial because a plaintiff under the Lanham Act need not prove actual or likely consumer deception or the materiality of a statement if the statement is literally false. *Id.* By contrast, if a statement is literally true but misleading or ambiguous, the plaintiff must demonstrate actual consumer confusion or deception and the materiality of the statement. *Id.*

The Seventh Circuit has not determined whether using the word patent or "patented" when, in fact, a patent is invalid constitutes a literally false statement. Cargo asserts that M-3's use of the patent number and the word "patented" is literally false, but presents no case law to support this conclusion. Likewise, M-3 produces no significant case law supporting its assertions that the statements are not literally false, arguing that the term "patent" simply indicates that their product was patented at one time. This Court too, has found very little guidance on this issue. Some persuasive authority, however, can be found in *Abdallah v. Pileggi,* 1998 WL 180491, *4 (Fed.Cir.1998), in which the court stated:

**\*4** The word "patented" has both a legal and a lay meaning. The legal definition is that the subject matter in question is covered by a valid patent. We realize that this is a legal conclusion dependent on a number of factors. If this were the only basis for concluding that the challenged statements were literally false we would be cautious. The word also has a lay interpretation, however, that is largely undisputed. Webster defines "patented," the adjective, as "Protected by a patent." *Webster's II New College Dictionary* 805 (1995). The defendants have not offered, nor do we know of any other commonly accepted definition of patented that means "Protected by [claims in an allowed but not yet issued] patent." The lay definition is wholly compatible with the legal definition, and the defendants have not offered any competent evidence of a contrary definition, except the subjective, self-serving testimony of one of the defendants.

*SeealsoM. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 68 F.Supp.2d 494, 506 (D.N.J.1999) (holding that using a patent number and the term patent pending would lead consumers to believe that either the product was covered by the patent or in the process of obtaining a patent, neither of which was true, and was evidence of a false statement). While *Abdallah* is an unpublished opinion and non-binding, this Court finds the reasoning of the Federal Circuit persuasive. As reasoned by the Federal Circuit, a consumer would take the word "patented" or Patent '828 to mean that the item advertised is protected by a valid patent, not, as M-3 subjectively suggests, that the item was covered by the patent at one time. Accordingly, this Court adopts the reasoning of the Federal Circuit in *Abdallah,* and holds that M-3's advertisements are literally false because the patent is invalid and M-3 is using patent language that suggests a valid patent.

2. *Cargo need not prove that M-3's statements deceived, had a tendency to deceive, or that the deception was material*

As previously stated, because M-3's statements are literally false, Cargo does not need to prove that the statements had a tendency to deceive a substantial segment of the market. *Hot Wax,* 191 F.3d at 820. Likewise, because Cargo does not need to prove the statements deceived or had a tendency to deceive, it also does not need to prove that such deception was material since this is an extension of the second step. *SeeBASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081 (7th Cir.1994) (directly proceeding to a determination of damages after finding a statement literally false).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00969    Document 26-2    Filed 05/07/2008    Page 5 of 9

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 834690 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 834690)**

*3. M-3 caused its false statement to enter interstate commerce*

Cargo asserts that after the court determined that the '828 patent was invalid, M-3 continued to use the patent reference on its website, its advertisements, and its marketing catalog, mediums that allow the statement to travel through interstate commerce. M-3 fails to put forth any evidence rebutting Cargo's assertions. As such, there are no issues of fact concerning this element.

*4. Cargo is likely to be injured by the false statement*

**\*5** Lastly, Cargo argues that it is likely to be injured by the false statement in M-3's advertisements because the statement implies product exclusivity. Conversely, M-3 argues that Cargo's motion should fail because the likelihood of injury is purely speculative. M-3's arguments are without merit. To prevail under a Lanham Act claim, a plaintiff must show that it has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself or by a loss of goodwill. *Hot Wax,* 191 F.3d at 819. Thus, Cargo need not prove an actual calculable injury, but may succeed by simply establishing a likelihood of injury.

In *Keller Medical Specialties Prod. v. Armstrong Medical Industr., Inc.,* 842 F.Supp. 1086, 1090 (N.D.Ill.1994), the court found a likelihood of injury based upon an offending party's advertisement that it was the "sole" distributor of a product. In finding likely injury, the court held that "[a] potential customer reading the label would assume [it was the only source] from the claim of exclusivity and would be more likely to order or re-order from [the advertiser] rather than shop around."*Id.* at 1092.

Like *Keller,* Cargo is likely to be injured because the terms "patented" and "Patent No. 5,768,828," as used in M-3's advertisements, carry with them an understanding of exclusivity and protected rights likely leading a purchaser to order from M-3 rather than Cargo.

Attempting to deflect a claim of likely injury, M-3 produces affidavits from three of its own customers stating that they would not purchase a dual spring counterbalanced system from a particular supplier simply because it contained the word patent. These affidavits, however, do not create a genuine issue of material fact on which a trier of fact could rule for M-3. To succeed on its claim, Cargo need only establish that it will likely be injured, not that it has been actually injured. The affidavits from M-3's current clients who have developed business relationships with M-3 do not preclude the fact, as reasoned in *Keller,* that Cargo will likely be injured by M-3's advertisements. Therefore, because there was a literally false commercial statement, that traveled through interstate commerce, which is likely to injure Cargo, this Court RECOMMENDS that Cargo's motion for summary judgment as to Count III, false advertising, be GRANTED.

C. *M-3 should be enjoined from false advertising pursuant to 15 U.S.C. § 1116*

Cargo requests that this Court enjoin M-3 from false advertising pursuant to 15 U.S.C. § 1116. 15 U.S.C. § 1116 states:

The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title....

**\*6** As reasoned above, Cargo has proven all of the elements of a false marking violation under 15 U.S.C. § 1125(a). In order to prevent future violations, pursuant to 15 U.S.C. § 1116, this Court therefore RECOMMENDS that Cargo's request for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

an injunction be GRANTED and that an injunction be entered against M-3 ordering it immediately to remove the word "patented" and/or "Patent No. 5,768,828" from all advertisements, product catalogs, website, and any other advertising or promotional material related to its dual spring counterbalanced systems. In addition, pursuant to 15 U.S.C. § 1116, this Court also RECOMMENDS that M-3 be ordered to file and serve Cargo within thirty (30) days of this judgment, a written report, under oath, setting forth in detail the manner and form in which it has complied with the injunction.

IV. CARGO'S FALSE MARKING CLAIM

Cargo is also seeking summary judgment on its false marking claim, asserting M-3 violated patent law by using the '828 patent when the patent had been declared invalid. False marking is governed by 35 U.S.C. § 292 which states "whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public ... shall not be fined more than $500 for every such offense."In cases involving issues of patent law, Federal Circuit law applies. *Midwest Industr ., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359 (Fed.Cir.1999).

To prevail on a false marking claim, Cargo must prove: "(1) a marking importing that an object is patented; (2) falsely affixed to; (3) an unpatented article; (4) with intent to deceive the public ."*Clontech Laboratories, Inc. v. Invitrogen Corp.,* 263 F.Supp.2d 780, 791 (D.Del.2003). A violation of 35 U.S.C. § 292 occurs only when the court finds an intent to deceive the public. *Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co., Inc.,* 786 F.2d 1124, 1125 (Fed.Cir.1986); *Genlyte Thomas Group LLC v. National Service Industries, Inc.,* 262 F.Supp.2d 753, 755 (W.D.Ky.2003).

A. *M-3's markings imported that the dual spring counterbalanced system was patented*

M-3's website, product catalog, and advertisement in a magazine all contain either the designation "Patent No. 5,768,828" or "patented" when referencing its dual spring counterbalanced system, representing that the item is patented. As M-3 does not dispute this element, this Court finds that the systems were marked with the patent reference.

B. *M-3's use of "patented" is falsely affixed to an unpatented item*

"The second and third factors of the analysis are closely related and require that the marking was 'falsely affixed' to 'an unpatented article," ' and will therefore be examined together. *Clontech,* 263 F.Supp.2d at 792. In *Clontech,* the court held that a patent designation was falsely affixed to an unpatented item when the researchers became aware that a patent did not apply to a particular product. *Id.* Likewise, in *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 68 F.Supp.2d 494, 506 (D.N.J.1999), the court held that using a patent number and the term patent pending would lead consumers to believe that either the product was covered by the patent or in the process of obtaining a patent, neither of which was true and was evidence of a false statement.

**\*7** In this case, the court invalidated M-3's patent on August 11, 2000. At that time, similar to *Clontech,* M-3 became aware that the patent did not cover the dual spring counterbalanced system. Further, any doubt as to the patent's coverage was extinguished upon M-3's loss on appeal in April 2002, and when the Supreme Court denied *cert.*

M-3 argues that it did not falsely affix the patent designation because the patent, although invalid, still existed, and anyone could verify the status of the patent by checking the Patent and Trademark Office's website. While the patent number did technically still exist, M-3's dual spring counterbalanced system was not actually patented because the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d	Case 1:08-cv-00969	Document 26-2	Filed 05/07/2008	Page 7 of 9	Page 7
Not Reported in F.Supp.2d, 2004 WL 834690 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 834690)**

patent was invalid. As reasoned in *M. Eagles,* the continued use of a statement that was not accurate and that would mislead consumers is evidence of a false statement. Thus, when M-3 continued to use the patent language on its dual spring counterbalanced systems, it falsely affixed that label to an unpatented item.

C. *M-3 had the intent to deceive the public*

Cargo contends that M-3 intentionally deceived the public because M-3 had notice that its patent was invalid on August 11, 2000, but, despite this notice, continued advertising the '828 patent. M-3 asserts, however, that the acts were unintentional because it believed the patent would be declared valid through the reissuing process and that it relied on the advice of counsel.

Reasonable inferences may properly be drawn from established facts in order to prove an intent to deceive. *Clontech,* 263 F.Supp.2d at 792. In *Clontech,* the court found deceptive intent when researchers learned that a product was not covered by the particular patent, thus losing any good faith belief that the products were covered. *Id.* at 793; *see also Blank v. Pollack,* 916 F.Supp. 165, 173 (N.D.N.Y.1996) (holding that Defendant lost its good faith belief when it learned of the possibility that the patent did not cover the product); *compare Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co., Inc.,* 786 F.2d 1124, 1125 (Fed.Cir.1986) (holding that marking a product as patented when the patent had expired was not false marking); *Laughlin Products, Inc. v. ETS, Inc.,* 257 F.Supp.2d 863, 871 (N.D.Tex.2002) (holding that there was not an intent to deceive when the defendants removed the patent label from its product when it learned that a product might not be covered under the patent).

Like the offending parties in *Clontech* and *Blank,* M-3 was placed on notice that its patent was invalid upon receipt of the district court's decision on August 11, 2000, losing the good faith defense. Furthermore, M-3 was again notified two more times of the invalidity, once on April 2, 2002, when the Court of Appeals affirmed the district court's ruling and again when the Supreme Court denied *cert.*[FN1]

> FN1. M-3 states that the judicial determination of the validity was not complete until December 13, 2002 and that it has not created any new material since 2001. (M-3 Memo. page 8; App. A ¶ 6). However, M-3 had notice of the invalidity on August 11, 2000 when the trial court ruled the patent invalid. As stated in *Clontech* and *Blank,* M-3 lost its good faith reliance as of that date and the subsequent promotional materials were in violation of the false marking statute.

M-3 relies on *Arcadia* to avoid liability, stating that it relied on the advice of its counsel. *Arcadia,* however, involved a reliance based upon an expired patent that, at one time, was valid. By contrast, the '828 patent was never valid, and M-3 should have been aware of this based upon various court rulings. A defense based upon the reliance of counsel is simply not compelling. *See Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.,* 786 F.Supp. 1287, 1296 (N.D.Ohio 1991) (stating that merely consulting a patent attorney did not relieve them of liability for false marking). The opinion of a skilled and learned counsel is one thing; a judgment by one court and affirmation by another court is an entirely different matter. The former is a prediction, the latter is a conclusion. Thus, because of M-3's continued use of the '828 patent after it had been put on notice that the patent was invalid, this Court finds that M-3 acted with intent to deceive the public.[FN2] Because there was a marking importing that the system was patented, the marking was falsely affixed to an unpatented object, and M-3 acted with an intent to deceive the public, this Court RECOMMENDS that Cargo's motion for summary judgment on Count IV, false marking, be GRANTED.

> FN2. This Court notes that, even assuming that M-3, in good faith, had relied on the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

advice of its counsel during the appeal, as of the date of this opinion, M-3 is still advertising the patent number and reference on its website, which is nearly two years after the Court of Appeals upheld the patent's invalidity. M-3, by continuing to use these references for such a lengthy period of time, has lost its good faith defense.

V. ANCILLARY MATTERS

A. *Damages*

**\*8** In its request for relief, Cargo requests that this Court allow it thirty (30) days to file a motion to dismiss Counts I and II and to file a motion to recover damages pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 292. Because this Court has recommended judgment in favor of Cargo, Cargo's request is GRANTED.

B. *M-3's Counterclaims for Bad Faith*

Cargo also moves for summary judgment on M-3's counterclaim of bad faith litigation. Cargo's motion on these claims appears only briefly in its motion for partial summary judgment on its counterclaims and again in the request for relief. Pursuant to N.D. L.R. 56.1, "any party opposing the motion shall, within thirty days ... file any affidavits or other documentary material controverting the movant's position, along with a response."M-3 has failed to respond in anyway to Cargo's motion for summary judgment on M-3's counterclaims. This Court must therefore "assume the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted ..." N.D. L.R. 56.1. Thus, without objection from M-3, this Court will accept as true Cargo's assertions of fact.

In addition, this Court notes that, because this Court has recommended granting Cargo's motion for partial summary judgment on its claims, it would be inconsistent to rule that those claims were made in bad faith or that they resulted from an abuse of process. Therefore, this Court RECOMMENDS that Cargo's motion for summary judgment regarding M-3's counterclaims be GRANTED.

VI. CONCLUSION

For the foregoing reasons this Court RECOMMENDS that Cargo's motion for partial summary judgment [Doc. No. 111] for Count III, false advertising, Count IV, false marking, and for summary judgment on M-3's counterclaims of bad faith litigation and abuse of process be GRANTED. Specifically, this Court further RECOMMENDS:

• GRANTING Cargo's request that M-3 be enjoined from falsely advertising the '828 patent.

• Specifically, this Court RECOMMENDS that injunction be entered against M-3 ordering it immediately to remove the word "patented" and/or "Patent No. 5,768,828" from all advertisements, product catalogs, website, and any other advertising or promotional material related to its dual spring counterbalanced systems. In addition, pursuant to 15 U.S.C. § 1116, this Court also RECOMMENDS that M-3 be ordered to file and serve Cargo within thirty (30) days of this judgment, a written report, under oath, setting forth in detail the manner and form in which it has complied with the injunction.

• GRANTING Cargo's request for thirty (30) days to file a motion to recover damages pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 292.

• Additionally, Cargo's request for thirty (30) days to file a motion to dismiss Counts I and II of its counterclaim is GRANTED.

NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.Fed.R.Civ.P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00969    Document 26-2    Filed 05/07/2008    Page 9 of 9

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 834690 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 834690)**

Page 9

*Thomas v. Arn,* 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.,* 84 F.3d 239 (7th Cir.1996); *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988); *Video Views, Inc. v. Studio 21 Ltd.,* 797 F.2d 538 (7th Cir.1986).

**\*9** SO ORDERED.

N.D.Ind.,2004.
M-3 & Associates, Inc. v. Cargo Systems Inc.
Not Reported in F.Supp.2d, 2004 WL 834690 (N.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.