Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2005 WL 2465815 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2465815)**

Gold v. Golden G.T., LLC
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Gil GOLD and Tamir Levy, individually and d/b/a
Gold & Levy, Plaintiffs,
v.
GOLDEN G.T., LLC, an Illinois Limited Liability
Company; Aer Services, Inc., an Illinois Corpora-
tion, Shlomoh Ben-David, an individual, and
Tomer Laks, an individual. Defendants.
**No. 05 C 288.**

Oct. 4, 2005.

William Luciano Niro, Kara Leta Szpondowski,
Niro, Scavone, Haller & Niro, Ltd., Chicago, IL,
for Plaintiffs.
Mark M. Lyman, Anthony Alphonse Cavallo,
Robert B. Christie, Henderson & Lyman, Chicago,
IL, David A. Kaufman, David A. Kaufman & Asso-
ciates, Northbrook, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

FILIP, J.
**\*1** Plaintiffs, Gil Gold ("Gold") and Tamir Levy
("Levy"), individually and d/b/a/ Gold & Levy
(collectively, "Plaintiffs" or "Gold & Levy"), filed
a Second Amended Complaint ("Complaint") on
April 21, 2005, against Golden G.T., LLC ("Golden
G.T." or "Defendant"), AER Services, Inc. ("AER
Services"), and Shlomoh Ben-David ("Ben-David")
(collectively, "Defendants"). (D.E.58.) [FN1] The
Complaint alleged the following claims against De-
fendants: violations of the Lanham Act for trade-
mark infringement (Count I) and false designation
of origin (Count II) under 5 U.S.C. § 1125(a); viol-
ation of the Illinois Uniform Deceptive Trade Prac-
tices Act, 815 ILCS 510/2 ("UDTPA"), and Illinois
Consumer Fraud and Deceptive Business Practices
Act, 815 ILCS 505/10(a) ("CFDBPA") (Count III);

breach of contract/rescission (Count IV); and
design patent infringement under 35 U.S.C. § 271
(Count V).

> FN1. The various docket entries in this
> case are designated "D.E. __."

The case is before the Court on Golden G.T.'s mo-
tion to dismiss Count III of the Plaintiffs' Com-
plaint (which implicates only Golden G.T.) on the
grounds that (1) Gold & Levy failed to state a claim
upon which relief can be granted, *see*Fed.R.Civ.P.
12(b)(6), and (2) Gold & Levy failed to plead its
claim with the requisite particularity,
*see*Fed.R.Civ.P. 9(b). (D.E.62.) For the reasons
stated below, the Court respectfully denies the mo-
tion to dismiss.

FACTS [FN2]

> FN2. The facts are taken from Plaintiff's
> Complaint, which the Court assumes to be
> true, as precedent instructs. The Court
> takes no position on whether the allega-
> tions are actually well founded.

Gold & Levy have been in the business of develop-
ing, designing, marketing, manufacturing, import-
ing, and selling various houseware products
throughout the world since 1996. (D.E. 58 ¶¶ 5,
10.) In 2001, Gold & Levy developed a unique cer-
eal dispenser designed for home use, and determ-
ined that the United States market was their best
product launch opportunity. (*Id.* ¶ 18.)In 2002,
Gold & Levy incorporated under the name Golden
G.T., Ltd., (*Id.* ¶ 11), and in January 2003, they dis-
played their cereal dispenser at trade shows in the
United States bearing the EASY MORNING trade-
mark, including in Chicago. (*Id.* ¶ 20.)

According to the Complaint, Gold & Levy met de-
fendant Ben-David at a San Francisco, California
trade show around May 2003 and discussed launch-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2465815 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2465815)**

ing a U.S. business to market the cereal dispenser. (*Id.* ¶¶ 23, 24.)In June 2003, Plaintiffs entered into a written agreement ("Agreement") with AER Services-which was operated by Ben-David, its majority owner-to "initiate the development of a new corporation for the distribution of cookware and home goods."(*Id.* ¶¶ 7-8, 26.)To gain the goodwill connected with Gold & Levy's past experience, the new company purported to be associated with Golden G.T. Gold & Levy gave Defendants permission to use their website and the domain name, *www.goldengt.com;* the new company also used existing Gold & Levy marketing documents to publish its own marketing brochures which touted the "exceptional international reputation" of Gold, Levy, and Golden G.T., so as to help sell products for the new company. (*Id.* at ¶¶ 34, 35.)

**\*2** Gold & Levy worked hard to launch the EASY MORNING cereal dispenser and watched sales grow from zero to approximately $1 million from October 2003 to April 2004. (*Id.* ¶ 37.)According to the Complaint, Defendants' response to the success of the EASY MORNING cereal dispenser was to demand that the terms of the agreement with Gold & Levy be changed. (*Id.* ¶ 38.)When Gold & Levy refused, the Complaint states that Defendants initiated actions to "force plaintiffs out of the company."(*Id.* ¶ 39.)Defendants discontinued Gold & Levy's salary payments and threatened to charge them with, *inter alia,* "criminal trespass proceedings." (*Id.*) Thereafter, Defendants recognized a potential conflict in ownership of the trade name Golden G.T. and re-branded the cereal dispenser under the new company name "Zevro." (*Id.*) Defendants, however, continued to use the EASY MORNING trademark-which Plaintiffs "have spent a considerable amount of money" establishing-"on or in connection with ... goods in interstate commerce and within the State of Illinois."(*Id.* ¶¶ 46, 53.)

The Complaint further alleges that the Golden G.T. acted willfully and with reckless disregard by misrepresenting to the public that "[s]ince 1996, ZEV-

RO0 has brought customers ... products for the home."(*Id.* ¶¶ 42, 72, 74.)Further, Plaintiffs allege that Defendants distributed printed sales literature indicating that Golden G.T. is the source of the EASY MORNING cereal dispenser. (*Id.* ¶ 50.)These statements were made in Golden G.T.'s "distribution of printed marketing materials and its interactive web site, and [were] intended to induce consumers and other purchasers to rely on those representations in the purchase of [Golden G.T.'s] products." (*Id.* ¶ 72.)Gold & Levy allege that together, Defendants' trade practices have caused actual confusion among consumers as to the source of the cereal dispenser, (*id.* ¶ 59 (referencing print ads, forms, and sales literature)), and are likely to "cause confusion or mistake or deceive product buyers and consumers as to the source and origin of their goods."(*Id.* ¶ 55;*see also id.* ¶ 73 (discussing false implications that Defendant's goods originate from and are sponsored by Gold & Levy).) The Complaint further alleges that the goodwill associated with the EASY MORNING mark will be diminished because the Plaintiffs are unable to control the quality of goods supplied by the Defendant. (*Id.* ¶ 58.)

### LEGAL STANDARDS

The purpose of the motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint-not to determine whether the plaintiffs will ultimately prevail, but whether they are entitled to present evidence supporting their claim. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). The court must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Bressner v. Ambroziak,* 379 F.3d 478, 480 (7th Cir.2004); *accord Jang v. A.M. Miller & Assocs.,* 122 F.3d 480, 483 (7th Cir.1997). In considering the motion, the court is generally limited to the pleadings, which include the complaint, any exhibits attached thereto, and any supporting briefs. *Thompson v. Ill. Dept. of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir.2002). The court, however, is "neither bound to the plaintiff's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2465815 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2465815)**

legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims."*Avlon Indus. v. Robinson,* No. 01 C 3615, 2003 WL 22025004, at \*1 (N.D.Ill. Aug.27, 2003) (citing *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992)). Only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is dismissal for failure to state a claim appropriate. *Lee v. City of Chicago,* 330 F.3d 456, 459 (7th Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

\*3 Generally, a pleading need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief,"Fed.R.Civ.P. 8(a)(2), such that it provides fair notice of the nature of the plaintiff's claim and the grounds upon which it rests. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *accord Scott v. City of Chicago,* 195 F.3d 950, 951 (7th Cir.1999). A charge of fraud, however, must be pled with particularity in federal court. *See*Fed.R.Civ.P. 9(b). The Seventh Circuit instructs that the complaint must allege " 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." ' *Kennedy v. Venrock Assocs.,* 348 F.3d 584, 593 (7th Cir.2003) (quoting *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990)).

## DISCUSSION

In Count III of the Complaint, Gold & Levy allege that the Defendants' unauthorized use of the EASY MORNING mark and false representations made to consumers violate the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2. Plaintiffs also allege that this misconduct likewise constitutes a violation of the Illinois Consumer Fraud and Deceptive Practices Act ("CFDBPA"), 815 ILCS 505/2.

I. Plaintiffs State a Claim under the UDTPA and CFDBPA

In its motion to dismiss, Golden G.T. first argues that Plaintiffs have failed to allege that they are a consumer of Defendants' product or that a sufficient consumer nexus exists to implicate consumer protection concerns, as is required to state a claim under the CFDBPA. (D.E. 62 at 3.) Defendant also argues that where the Plaintiffs have not alleged a sufficient consumer nexus, the "UDTPA component of Plaintiffs' [CFDBPA] claim must also fail."(D.E. 62 at 4.) This Court respectfully disagrees with both arguments.

First, although conduct prohibited by the UDTPA also violates the CFDBPA, the "two acts are not co-extensive." *Pain Prevention Lab, Inc. v. Waveform,* 657 F.Supp. 1486, 1493 (N.D.Ill.1987). While the "same operative facts may sustain a cause of action under either" the CFDBPA or the UDTPA, *Native Am. Arts, Inc. v. Vill. Originals, Inc.,* 25 F.Supp.2d 876, 882 (N.D.Ill.1998), the CFDBPA is the only statute in Count III which requires a consumer nexus. *See Avlon v. Robinson,* No. 01 C 3615, 2003 WL 22025004, at \*3 (N.D.Ill. Aug.27, 2003). The Plaintiffs satisfactorily stated the UDTPA claim by alleging that the Defendants misrepresented Plaintiff's product, confused the public as to the source or sponsors of that product, and damaged the Plaintiffs' goodwill and reputation with these deceptive practices. "Under Illinois law, proof of a trademark infringement is sufficient to establish a violation of the Illinois Uniform Deceptive Trade Practices Act and constitutes unfair competition under Illinois common law."*Pirelli Armstrong Tire Corp. v. Titan Tire Corp.,* 4 F.Supp.2d 794, 799 (C.D.Ill.1998) (collecting federal and state appellate caselaw, including *TMT N. Am., Inc. v. Magic Touch GmbH,* 124 F.3d 876, 881 (7th Cir.1997)). Plaintiffs allege that they have a valid trademark and that infringement has occurred. *See Pirelli,* 4 F.Supp.2d at 799 (citing *Echo Travel, Inc. v. Travel Assoc., Inc.* 870 F.2d 1264, 1266 (7th Cir.1989); *see also* D.E. 58 ¶¶ 46-49, 52-64, 68, 70-71.) On

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2465815 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2465815)**

the facts as pleaded, the UDTPA portion of the count survives.[FN3]

> FN3. The Court notes that Defendants have made no issue of the fact that Count III advances claims under both the UDTPA and CFDBPA. *See generally Kirksay v. R.J. Reynolds Tobacco, Co.,* 168 F.3d 1039, 1041 (7th Cir.1999) (litigants do not even need to plead legal theories to survive a motion to dismiss on an otherwise-valid complaint).

**\*4** As a result, the best Defendants can hope for is the dismissal of the CFDBPA claim from Count III. *See Avlon Indus.,* 2003 WL 22025004 at \*1, 3. For the reasons stated below, Golden G.T.'s motion to dismiss the CFDBPA claim is also denied.

The CFDBPA prohibits the

employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" ... in the conduct of any trade or commerce.

815 ILCS 505/2. The CFDBPA is " 'primarily concerned with protecting the consumers" ' *Nakajima All Co. Ltd. v. SL Ventures, Corp.,* No. 00 C 6594, 2001 WL 641415, at \*2 (N.D.Ill. June 4, 2001) (quoting *Indus. Specialty Chems. v. Cummins Engine Co.,* 902 F.Supp. 805, 811 (N.D.Ill.1995)), which it defines as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). The CFDBPA, however, also seeks to protect businesses from "fraud and unfair competition," *Mitsubishi Elec. Corp. v. IMS Tech., Inc.,* 1997 WL 630187, at \*10 (N.D.Ill. Sept.30, 1997) (Williams, J.), thus allowing busi-

ness entities to be considered "persons" under the CFDBPA, 815 ILCS 505/1(c); *accord Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.,* 214 Ill.App.3d 1073, 158 Ill.Dec. 185, 573 N.E.2d 1370, 1376 (Ill.App.Ct.1991), and to bring suit as a "representative of the consumer interest." *Speakers of Sport, Inc. v. ProServ, Inc.,* 178 F.3d 862, 868 (7th Cir.1999).

To state a claim under the CFDBPA, a pleading must allege that: (1) the defendant committed a deceptive act; (2) the defendant intended to induce consumer reliance on the deception; and (3) that the deception occurred during trade or commerce. *See Siegel v. Levy Organization Dev. Co.,* 153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 198 (Ill.1992); *accord MidAmerican Energy Co. v. Util. Res. Corp.,* No. 03 C 2313, 2003 WL 22359526, at \*5 (N.D.Ill. Oct.15, 2003). Further, the plaintiff must either allege it was a consumer of the defendant or allege a nexus with Illinois consumers. *See, e.g., Ivanhoe Fin., Inc. v. Highland Banc Corp.,* No. 03 C 7336, 2005 WL 1498878, at \*2 (N.D.Ill. June 9, 2005) (citation omitted). Golden G.T. does not argue that Plaintiffs have failed to allege any of the first three elements of a CFDBPA claim. Rather, Golden G.T. argues that Plaintiffs have failed to allege the necessary consumer nexus. In response to Golden G.T.' argument, Plaintiffs do not claim to be a consumer of Defendants, but maintain they have made allegations sufficient to satisfy the "consumer nexus" pleading requirement.

The Court respectfully rejects Golden G.T.'s argument that Plaintiffs' have failed to meet the threshold pleading requirement. To plead a consumer nexus successfully, a plaintiff need only allege that the conduct complained of "involves trade practices directed to the market generally or otherwise implicates consumer protection concerns."*Athey Prods. Corp. v. Harris Bank Roselle,* 89 F.3d 430, 437 (7th Cir.1996) (collecting cases). To state a claim as a non-consumer, a business plaintiff can allege that the defendant undertook trade practices directed to the market gener-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2465815 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2465815)**

ally. Misrepresentations made by the defendant that are likely to cause confusion, mistake or deception as to the affiliation or association with the plaintiff may satisfy this requirement if they are directed to "consumers," as opposed to simply "customers" of the business plaintiff. *Compare Nakajima,* 2001 WL 641415, at *3 (allegations that defendant's actions would mislead its "customers" failed to plead a cause of action under the CFDBPA because its customers were distributors and retailers and therefore did "not constitute the required connection to consumers"), *with Pain Prevention Lab,* 657 F.Supp. at 1493 (allegations that defendant made alleged misrepresentations "in the marketplace and to actual and/or prospective customers" sufficient to state a claim). Beyond the alleged consumer connection, a plaintiff need not plead "any special damages other than damages to reputation, business, or prestige."*Gadson v. Newman,* 807 F.Supp. 1412, 1421 (C.D.Ill.1992) (citing *Downers Grove Volkswagen v. Wigglesworth Imports, Inc.,* 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33, 41 (Ill.App.Ct.1989)) (internal quotation omitted). Alternatively, a business plaintiff can successfully plead a consumer nexus by alleging the defendant's actions implicate consumer protection concerns.FN4

> FN4. Courts have struggled at times to define the scope of consumer protection concerns. Some courts have held that a business plaintiff must allege facts that show a "direct or inherent impact on consumers to implicate consumer protection concerns."*IFC Credit Corp. v. B. Braun Medical, Inc.,* No. 03 C 8815, 2004 WL 2921870, at *2 (N.D.Ill.Dec.15, 2004); *accord Pressalite Corp. v. Matsushita Elec. Corp. of Am.,* No. 02 C 7086, 2003 WL 1811530, at *10 (N.D.Ill. Apr.4, 2003) (something more than a mere effect on consumers must be alleged). Other courts, however, have held that where a plaintiff's allegations "suggest that Illinois consumers have been harmed, plaintiff has

sufficiently connected defendant's conduct with consumer protection concerns."*Second Chance Body Armor, Inc. v. American Body Armor, Inc.,* No. 94 C 6178, 1996 WL 568794, at *2 (N.D.Ill. Sept.30 1996) (Williams, J.); *accord Stunfence, Inc. v. Gallagher Security (USA), Inc.,* No. 01 C 9627, 2002 WL 1838128, at *6 (N.D.Ill. Aug.12, 2002) (noting that where plaintiff alleged that defendant's actions would confuse and deceive the consumer about the "true source and quality" of the product, the plaintiff passed the consumer nexus test). Because the Court finds that Plaintiffs have sufficiently alleged that Defendant undertook trade practices directed to the market generally, as discussed *infra,* the Court need not determine the scope of "consumer protection concerns" or whether the allegations in the Complaint sufficiently implicated consumer protection concerns. The Court notes, however, that at least one Illinois appellate court has held that allegations that a business which published false information directed toward consumers sufficiently "alleged conduct which implicates consumer-protection concerns" for purposes of the CFDBPA. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33, 41 (Ill.App.Ct.1989) (defendant sent brochures to consumers with false information about plaintiff's prices for services).

**\*5** Assuming all alleged facts to be true and drawing all reasonable inferences for the Plaintiffs, this Court finds that Gold & Levy have sufficiently alleged that Defendants' misrepresentations were directed at the market generally, which satisfies the requisite consumer nexus. The Complaint specifically alleges that Defendants' website, advertising, forms, and packaging-which use the Plaintiffs' EASY MORNING mark and represent to the "consuming public" that its products are the result of experience

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2465815 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2465815)**

"since 1996"-leads "consumers ... to believe that defendant's goods originate from, or are associated with, sponsored by, or approved by, the plaintiffs."(D.E. 58 ¶¶ 50, 72, 73.) Plaintiff allege that "[t]he use of the EASY MORNING MARK by the defendants in their print advertising, forms and literature has caused actual confusion and mistake and deception of consumers as to the source of origin of their services."(*Id.* ¶ 59, 137 Ill.Dec. 409, 546 N.E.2d 33.) Further, Plaintiffs allege that Defendants' misrepresentations "hamper [ ] efforts ... to continue to protect their outstanding reputation for high quality goods, resulting in the loss of the considerable expenditures plaintiffs made to develop and sell their goods."(*Id.* ¶ 67, 137 Ill.Dec. 409, 546 N.E.2d 33.) The alleged misrepresentations, when construed in the light most favorable to Plaintiffs, are directed toward both customers of the parties (*i.e.* retail sellers of the cereal dispensers) and consumers (*i.e.* direct purchasers of the cereal dispensers). There is nothing in Plaintiff's allegations which would indicate that the misrepresentations are directed toward anything but the market generally.

Furthermore, Plaintiffs allege that Golden G.T. and the other defendants have "hijacked their [Plaintiffs'] web address, *'www.goldengt.com'* and have since then converted it to Zevro." (*Id.* ¶ 40.)Plaintiffs also state that language on the resultant Zevro website, which misleadingly suggests Plaintiffs' approval and involvement with the Zevro product, is aimed at direct consumers and not to retailers or distributors. (*See* D.E. 78 at 4 (citing Complaint, Ex. L (citing language which states that "Zevro specializes in the development ... of ... kitchenware products designed to make your [*i.e.,* not "your customers'] life easier"))).) Defendants, in reply, suggest that the web language Gold & Levy cites does "not necessitate drawing the conclusion that the website is targeted to consumers."(D.E. 79 at 4.) Given the language of the website, however, the inference Plaintiffs propose is a reasonable one-even if not the only conceivable one. That is enough to survive a motion to dismiss. *See, e.g.,*

*Avlon,* 2003 WL 22025004 at *3.

Thus, Plaintiffs have appropriately pled a consumer nexus by alleging that Defendants' trade practices were directed at the market generally and further alleging a reputational and financial harm. *See Pain Prevention Lab,* 657 F.Supp. at 1493 (allegations of misrepresentations concerning approval of a device by the FDA and the existence of a patent which were made "in the marketplace and to actual and/or prospective customers" were sufficient to state a claim under the CFDBPA). Although Defendant is free to raise its arguments upon development of a full factual record, the Court concludes that Plaintiffs have sufficiently stated a claim at this stage of the proceedings.

**II. Plaintiff Pled with Particularity Pursuant to Rule 9(b)**

**\*6** Golden G.T. also moved to dismiss Count III on the grounds that Gold & Levy failed to state its statutory fraud claims pursuant to the CFDBPA and the UDTPA with the requisite particularity. *See*Fed.R.Civ.P. 9(b). Gold & Levy acknowledge the applicability of Rule 9(b), but argue that the Complaint meets the particularity requirement.

To satisfy Rule 9(b), a plaintiff must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."*Venrock Assocs.,* 348 F.3d at 593 (collecting cases) (internal quotation omitted). The plaintiff is not required to plead facts conclusively establishing that the alleged misrepresentation is false, *see Bankers Trust Co. v. Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1993), but instead must state "some specific act, series of acts, or omission by the defendant from which the court could plainly infer fraudulent conduct."*DeLeon v. Beneficial Const. Co.,* 55 F.Supp.2d 819, 826 (N.D.Ill.1999) (collecting cases).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2465815 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2465815)**

This Court finds that Plaintiffs' amended complaint satisfies the particularity pleading requirements. Gold & Levy did not make mere conclusory allegations of Defendants' misrepresentations or any reasonable analog to it. Rather, as precedent requires, Gold & Levy specified:

• who-Defendant;

• where-in sales literature, including internet advertising, and forms and in sales of products bearing the EASY MORNING MARK at a Carson Pirie Scott store in Chicago, Illinois;

• when-in an ongoing fashion, and in the least, on December 28, 2004 (*see* D.E. 58, Ex. J, L)); and

• what-made false and misleading representations regarding ZEVRO's affiliation with products bearing the EASY MORNING mark, including that ZEVRO (as opposed to Gold & Levy) has been bringing customers home products since 1996, with the intention of inducing consumers and other purchasers to rely on those misrepresentations and to falsely believe that Defendant's goods originate from or are sponsored by Gold & Levy.

Gold & Levy provided these particulars regarding Defendants' alleged deceptive use of the EASY MORNING mark and the accompanying misrepresentations that allegedly are likely to cause consumer confusion as to the source of the cereal dispenser. (*See, e.g.,* D.E. 58 ¶¶ 42, 45, 50, 54, 59, 72-73.) *See generally Uni\*Quality, Inc. v. Infotronx Inc.,* 974 F.2d 918, 923 (7th Cir.1992) (under Rule 9(b), "plaintiff must plead the 'who, what, when, and where' of the alleged fraud"). Plaintiffs also specifically explained why, in their view, the statements were false, misleading, and fraudulent. (*See, e.g.,* D.E. 58 ¶¶ 40-42, 55, 59, 71, 72-74.)

Golden G.T.'s argument that Plaintiffs failed to plead with specificity because they "patch[ed] together references to the Complaint's exhibits without directly pleading the information" is unsupported. The Plaintiffs referenced exhibits only add content to the stated allegations by referring to the actual website, advertisements, and packaging that displayed the alleged misrepresentations. For all of these reasons, Plaintiffs' pleadings are sufficient under Rule 9(b).

CONCLUSION

**\*7** For the reasons stated above, the Court respectfully denies the Motion to Dismiss Count III (D.E.62).

So ordered.

N.D.Ill.,2005.
Gold v. Golden G.T., LLC
Not Reported in F.Supp.2d, 2005 WL 2465815 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.