Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

Buztronics, Inc. v. Theory3, Inc.
S.D.Ind.,2005.
Only the Westlaw citation is currently available.
 United States District Court,S.D. Indiana, Indiana-
polis Division.
BUZTRONICS, INC., Plaintiff,
v.
THEORY3, INC., Defendant.
**No. 104CV1485DFHVSS.**

Aug. 5, 2005.

David W. Gray, Todd A. Richardson, Lewis &
Kappes, Indianapolis, IN, for Plaintiff.
Ava K. Doppelt, Jeffrey S. Boyles, Allen Dyer
Doppelt Milbrath & Gilchrist, Orlando, FL, Kristi-
ana Marie Brugger, Nancy G. Tinsley, Baker &
Daniels, Indianapolis, IN, for Defendant.

ENTRY ON DEFENDANT'S MOTION TO DIS-
MISS

HAMILTON, J.
**\*1** Plaintiff Buztronics, Inc. sued defendant The-
ory3, Inc. seeking a declaration of patent invalidity
and noninfringement, and damages for unfair com-
petition and intentional interference with business
relationships and contracts. Defendant has moved
to dismiss the complaint under both Federal Rule of
Civil Procedure 12(b)(1), asserting there is no ripe
controversy to support subject matter jurisdiction
over the claim for declaratory relief, and Rule
12(b)(6) for failure to state a claim for relief on the
remaining claims. For reasons explained below, the
defendant's motion is denied.

*Background*

Defendant Theory3 is a Florida corporation that de-
velops novelty lighting devices and automotive
lighting accessories. In the late 1990s, Theory3 de-
veloped a novelty LED lighting device that it called
the "Tirefly." When attached to the valve stem of

an automobile, motorcycle, or bicycle tire, the Tire-
fly produces a circular beam of colored light as the
tire rotates. Theory3 secured U.S. Patent No.
6,467,939, which issued in 2001 and of which the
Tirefly is an embodiment.

Plaintiff Buztronics, Inc. is an Indiana corporation
that distributes and markets novelty lighting
devices such as those developed by Theory3. In
2000, the two companies agreed that Buztronics
would market and distribute specialty lighting
devices developed by Theory3, including the Tire-
fly, and would serve as liaison to the overseas man-
ufacturer of the products. Between 2000 and 2003,
Theory3 developed other lighting devices. Buztron-
ics marketed and distributed them and again served
as liaison to overseas manufacturers.

By January 2004, the business relationship between
the companies had begun to deteriorate. In August
2004, the companies signed a dissolution agreement
terminating their relationship. The dissolution
agreement provided in part: "the parties acknow-
ledge that they have products for sale and shall
have products for sale in the same markets and
provided that the products do not infringe intellec-
tual property rights of either party, they are free to
compete with one another in all markets."Lewis
Aff., Ex. B. ¶ 2.

Shortly after the dissolution, Buztronics brought a
line of novelty lighting products to market in com-
petition with the Tirefly and other Theory3 designs.
On September 10, 2004, Buztronics filed this action
against Theory3 alleging that the '939 patent held
by Theory3 was invalid and that Theory3 had
falsely told several of Buztronics' business asso-
ciates, customers, and other market participants that
the Buztronics products infringed Theory3's patent.
Cplt. ¶¶ 9-15.

Count I of Buztronics' four-count complaint alleges
that Theory3 attempted to suppress competition
from Buztronics by contacting Buztronics' overseas

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

manufacturer and falsely asserting the validity of the '939 patent. According to Buztronics, this communication cast doubt on Buztronics' legal rights to market its products and on the manufacturer's legal rights to produce the products. Count I also alleges that Theory3's contacts with Buztronics' customers falsely asserting the validity of the '939 patent would cause confusion and deception in the marketplace. Cplt. ¶¶ 17-19. Count II alleges that Theory3 tortiously interfered in Buztronics' business relationship with its overseas manufacturer by contacting the manufacturer and falsely asserting the validity of the '939 patent. *Id.,* ¶¶ 23-27.Count III alleges that Theory3 tortiously interfered with Buztronics' contracts with some employees by attempting to persuade them to work for Theory3. *Id.,* ¶¶ 30-33.Count IV reiterates the alleged invalidity of the '939 patent, asserts that Buztronics has not infringed the patent, and seeks a declaratory judgment as to both points. *Id.,* ¶¶ 34-42.Count IV also alleges:

**\*2** Buztronics has been subjected to threats and demands under claim of legal right by [Theory3], raising disputes as to the scope and validity of the Patent, alleged infringement of [Theory3's] claimed intellectual property rights by Buztronics and the right of Buztronics to engage in business relating to products in competition with [Theory3]. In light of [Theory3's] threats and accusations, Buztronics has a reasonable apprehension of facing a lawsuit alleging violation of [Theory3's] intellectual property rights.

*Id.,* ¶ 35.On November 12, 2004, Theory3 filed its motion to dismiss Buztronics' complaint.FN1

> FN1. On January 10, 2005, while the parties were still submitting papers on Theory3's motion to dismiss, Theory3 filed suit in the Middle District of Florida against Buztronics and its CEO, Edward Lewis. Theory3's Florida complaint alleged patent, copyright and trade dress infringement, as well as state law claims of misappropriation of trade secrets, unfair

competition, breach of fiduciary duty, and breach of a confidentiality agreement. See Docket No. 31, Ex. 1 to Supplemental Declaration. On February 24, 2005, Theory3 filed its motion in this court to transfer this action to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) or to stay this action. This court denied that motion on May 9, 2005. On May 11, 2005, the district judge in the Middle District of Florida ordered Theory3's suit transferred to this district where it is pending on this court's docket as Case No. 1:05-cv-00734-DFH-TAB.

*Jurisdiction*

Defendant challenges this court's subject matter jurisdiction over the plaintiff's claim for declaratory relief in Count IV. The court's jurisdiction over defendant's motion to dismiss Counts I through III under Rule 12(b)(6) does not depend on its having jurisdiction over plaintiff's claim in Count IV. The court has federal question jurisdiction over Count I under 28 U.S.C. § 1331 based on the Lanham Act and supplemental jurisdiction over Counts II and III. (Independent of the federal claims in Counts I and IV, the court has diversity jurisdiction under 28 U.S.C. § 1332 over the state law claims in Counts II and III.) Accordingly, the court addresses defendant's Rule 12(b)(6) motion first.

I. *Count I: Federal Unfair Competition*

In ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all reasonable inferences in the light most favorable to the plaintiff. *Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir.2000). For purposes of Theory3's motion, the issue is whether Buztronics might prove any set of facts consistent with the allegations that would give it a right to relief. *Wudtke v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

*Davel,* 128 F.3d 1057, 1061 (7th Cir.1997), citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). A defendant is entitled to dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Chaney v. Suburban Bus Division,* 52 F.3d 623, 626-27 (7th Cir.1995). Nevertheless, a plaintiff may still plead itself out of court if the complaint includes particulars that show it cannot possibly be entitled to relief.*Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir.1995), citing *Thomas v. Farley,* 31 F.3d 557, 558-59 (7th Cir.1994).

Buztronics alleges in Count I that Theory3 engaged in unfair competition in violation of Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1) (1994).FN2 To be entitled to relief under section 43(a), a plaintiff must ultimately prove that: (1) the defendant made a false or misleading statement of fact in commercial advertising or promotion about its or another's goods or services; (2) the statement deceived or was likely to deceive a substantial segment of the intended audience; (3) the deception was material; (4) the defendant caused the statement to enter interstate commerce; and (5) the statement resulted in injury to the plaintiff. *Zenith Electronics Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1348 (Fed.Cir.1999). One additional element comes into play where a plaintiff alleges that another party's attempt to enforce its patent rights amounted to unfair competition, so as to avoid conflict between patent laws and the Lanham Act. "[B]efore a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith."*Id.* at 1353.

> FN2. Section 43(a) provides in relevant part: "Any person who, on or in connection

with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ... shall be liable in a civil action."15 U.S.C. § 1125(a)(1) (1994).

**\*3** Defendant Theory3 argues that plaintiff Buztronics has failed to allege adequately that defendant made a false or misleading statement of fact and has failed to allege bad faith adequately on the theory that plaintiff must allege that the patent has already been officially declared invalid. The law does not support defendant's theories.

Plaintiff has clearly alleged that defendant made false statements regarding the validity and enforceability of the '939 patent. See Cplt. ¶¶ 13-14, 17-18. Defendant points out that an issued patent carries a presumption of validity pursuant to 35 U.S.C. § 282, which states in part: "A patent shall be presumed valid.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."According to defendant, plaintiff has "fail[ed] to state any judgment, finding, fact or reason why this patent is not in force and entitled to the presumption of validity.... Buztronics makes no allegation that the patent has been found invalid by any court.... [T]he Theory3 patent is valid unless and until an official determination is made."Def. Br. at 21-22.

In support of this theory, defendant cites *IMCS, Inc. v. D.P. Technology Corp.,* 264 F.Supp.2d 193 (E.D.Pa.2003), in which the district court dismissed a Lanham Act counterclaim asserted in a patent infringement suit. The court reasoned that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

plaintiff's patent was presumed valid, so a statement in the marketplace asserting the patent's existence and validity could not have been false. 264 F.Supp.2d at 197. In *IMCS,* the counter-claimant alleged that the plaintiff had obtained its patent by fraud and that it either knew or should have known that the patent was invalid. The court's opinion does not indicate whether there was an explicit allegation of bad faith, which may distinguish the case. However, to the extent the *IMCS* court held that even the deliberate, knowing, and bad faith assertion of an invalid patent could not be "false" under the Lanham Act until there has been an official determination of invalidity, the court did not cite any direct support for such a conclusion, and this court is aware of none.

The presumption of a patent's validity under section 282"is a procedural device, not a substantive rule. It assigns the burden, as set forth in the third sentence of § 282: The burden of establishing invalidity ... shall rest on the party asserting it."' *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1147 n. 2 (Fed.Cir.1983). Accordingly, while plaintiff ultimately will need to prove the '939 patent is invalid, that is not the plaintiff's burden at this stage. The plaintiff has given defendant ample notice of the Lanham Act claim. At this stage, the only issue is whether plaintiff has alleged any facts which, if true, would be inconsistent with an ultimate finding that the '939 patent was invalid. It has not done so.

Defendant asserts that "Buztronics has not made any allegation, beyond an unsupported conclusion of law, that even suggest[s] the Theory3 patent is invalid."Def. Br. at 21. To the contrary, plaintiff alleged that "On information and belief, [Theory3] *knows* the patent is invalid."Cplt. ¶ 14 (emphasis added). This allegation may not be a model of particularity, but it need not be. See Fed.R.Civ.P. 8(a). It alleges a fact which, if true, would overcome the presumption of patent validity established by section 282 of the Patent Act. The plaintiff has not pled facts that show it will be unable to prove defendant made a false or misleading statement of

fact.

**\*4** Defendant also argues that plaintiff has not adequately alleged bad faith. In *Zenith Electronics,* where the Federal Circuit adopted the bad faith requirement for section 43(a) claims based on assertions of patent rights, the court stated that "what constitutes bad faith remains to be determined on a case by case basis."182 F.3d at 1354. In *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367 (Fed.Cir.2004), the Federal Circuit held that the bad faith requirement adopted in *Zenith* cannot be satisfied "in the absence of a showing that the claims asserted were objectively baseless."*Id.* at 1375.[FN3]

> FN3.*Globetrotter* involved state law unfair competition claims. The *Globetrotter* court did not expressly apply its "objectively baseless" standard to federal unfair competition claims under the Lanham Act. However, the *Zenith* court adopted the bad faith standard for both state law and Lanham Act claims and described those contexts as "closely analogous" for purposes of the bad faith requirement. 182 F.3d at 1353-54.

Defendant Theory3 argues that under the *Globetrotter* "objectively baseless" standard, "until there is a determination of invalidity, which has not happened here, a patentee communication that it owns a valid patent is objectively accurate and does not establish bad faith."Def. Reply Br. at 9. As noted above, that view of the law seems to be unsupported, apart from the *IMCS* case, discussed above, which did not develop support for the theory.

In tracing the "jurisprudential background of the bad faith standard," the *Globetrotter* court discussed the meaning of "objectively baseless" in the context of the "sham litigation" exception to *Noerr-Pennington* immunity from antitrust liability for attempts to petition the government through litigation: "The lawsuit must be objectively baseless in the sense that no reasonable litigant could realistic-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

ally expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, ... an antitrust claim premised on the sham exception must fail."362 F.3d at 1376, citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (stating that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent").

To prevail on Count I, plaintiff will ultimately need to prove that the '939 patent is not only invalid, but that it is so obviously invalid that no reasonable patent holder could realistically have understood otherwise when making assertions to the market such as those allegedly made by Theory3. Even proof that Theory3 subjectively knew the patent was invalid, without more, might not meet that test. Again, however, on a motion to dismiss under Rule 12(b)(6), the question is not whether plaintiff has alleged facts that, if true, would meet that test. The question is whether the plaintiff might prove any set of facts *consistent with* the allegations that would give it a right to relief. *Wudtke v. Davel,* 128 F.3d at 1061 (emphasis added). A defendant is entitled to dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. at 45-46.

In deciding the motion, the court must give the plaintiff the benefit of facts it may assert in its brief. *E.g., Chavez v. Illinois State Police,* 251 F.3d 612, 650 (7th Cir.2001) (in reviewing dismissal under Rule 12(b)(6), court will consider factual allegations raised for first time in appellate briefs so long as they are consistent with complaint). In opposing the motion, the plaintiff has submitted the declaration of Buztronics CEO Edward Lewis stating in part:

**\*5** 9. On or about February, 2003, Daniel Deutsch, an officer of Theory3, informed me that he believed that the Tirefly patent was not valid because there existed prior Japanese art that "blew away" the

claims in the Tirefly patent.... He told me this in the context of explaining that he was having difficulties with the other shareholders in Theory3 and that if they tried to force him out of Theory3, he would have the Tirefly patent invalidated.

10. On or about March 29, 2004, while I was in Florida, Jason Barber, another officer of Theory3, told me that he did not believe the Tirefly patent was valid because Theory3 had challenged an entity with infringement of the Theory3 patent but the challenged entity presented Theory3 with prior art that stopped Theory3's claims in its tracks.

Declaration of Lewis ¶¶ 9-10.[FN4]

> FN4. By referring to this affidavit, the court is not converting the defendant's motion to one for summary judgment under Rule 56. As noted, a party opposing a motion to dismiss is entitled to set forth facts in its brief that it expects to be able to prove. There is no reason the party may not try to amplify such factual assertions by submitting affidavits or other documents that seem to support the factual assertions. Presenting affidavits presents the risk of conversion to summary judgment pursuant to Fed.R.Civ.P. 12(b), but the court may consider the factual assertions in the brief without converting the motion to a summary judgment. In this case, at least with respect to the Rule 12(b)(6) issues, the court treats the Lewis Declaration as merely providing examples of evidence that could be offered to support the complaint.

Neither these allegations nor any others in the plaintiff's pleadings show that plaintiff will be unable to show the '939 patent was so obviously invalid that no reasonable patent holder could realistically have understood it to be valid. Accordingly, the defendant's motion to dismiss for failure to state a claim is denied as to Count I.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

II. *Count II: Intentional Interference with Advantageous Business Relationships*

In Count II, plaintiff Buztronics alleges that defendant Theory3 tortiously interfered in its business relationship with its overseas manufacturer by contacting the manufacturer and falsely asserting the validity of the '939 patent. Cplt. ¶¶ 23-29. To succeed on this claim under Indiana law, the plaintiff will ultimately have to prove the following elements: (1) the existence of a valid business relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship, *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.,* 816 N.E.2d 40, 51 (Ind.App.2004). In addition, the plaintiff will need to show that the defendant acted illegally in achieving its goal. *Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633, 641 (7th Cir.1999), citing *Biggs v. Marsh,* 446 N.E.2d 977, 983 (Ind.App.1983).

Defendant argues that plaintiff's claim fails to allege the essential elements of absence of justification and wrongful interference. The defendant also argues that, as a state law claim, plaintiff's claim is preempted by federal patent law because it fails to allege bad faith adequately.

State law claims for tortious interference are preempted by federal patent law if the state law claim is based on a patent holder's good faith communications regarding its rights under federal patent laws. *Zenith Electronics,* 182 F.3d at 1355. And under *Globetrotter,* again, to show bad faith a plaintiff must show that the patent claims asserted were "objectively baseless." 362 F.3d at 1375. Defendant's arguments on the issue of bad faith are the same under counts I through III. For the reasons explained above, the argument does not support dismissal of any of those counts under Rule 12(b)(6).

**\*6** Plaintiff has given defendant fair notice of the claim in Count II and has adequately alleged wrongful interference and illegality. As explained in the previous section, the plaintiff has adequately stated a claim for a section 43(a) Lanham Act violation. Non-criminal illegal acts are sufficient to satisfy the illegality requirement for a claim of intentional interference with business relations. See *Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d at 641-42, and cases cited therein (reversing dismissal).

The plaintiff has also adequately pled absence of justification. See Cplt. ¶ 27. Defendant argues in essence that the section 282 presumption of patent validity and a patent holder's related right to communicate in good faith the validity of its patent establish that it acted with justification. That appears to be an argument on the merits and in effect sets forth an affirmative defense. "Complaints need not anticipate or attempt to defuse potential defenses."*United States Gypsum Co. v. Indiana Gas Co., Inc.,* 350 F.3d 623, 626 (7th Cir.2003), citing *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In any event, complaints also need not allege all elements of a claim; they must only give notice of the claim. *E.g., Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998) (reversing dismissal; complaints need not plead law or match facts to every element of a legal theory).

The Supreme Court of Indiana has referred to the Restatement (Second) of Torts § 767 for factors relevant to the issue of justification. See *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1235 (Ind.1994).[FN5] Section 767 comment a refers to section 768 of the Restatement for disputes between competitors. Section 768 sets forth a "non-exhaustive" set of factors to consider as part of a "balancing process" in determining whether an alleged tortious interference lacks justification. These factors include:

> FN5.*Winkler* involved a claim for tortious interference with a contract, but the elements are the same as those required for interference with a business relationship, except for the requirements of a contract

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

and illegal action. See *Biggs v. Marsh,* 446 N.E.2d 977, 983 (Ind.App.1983).

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (2d) Torts § 768, and § 767 comment b. These fact-sensitive factors are not suited to disposition on this motion to dismiss on the pleadings. The defendant's motion to dismiss is denied as to Count II.

III. *Count III: Intentional Interference with a Contract*

The plaintiff has alleged that the defendant contacted several of its employees and attempted to hire them from Buztronics. Plaintiff alleges that it "had a valid employment relationship and enforceable Confidentiality Agreements" with these employees. Cplt. ¶¶ 12, 30-33. To prevail on this claim under Indiana law, plaintiff ultimately will have to prove the following: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the contract's existence; (3) defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) resulting damages.*Fields v. Cummins Employees Fed. Credit Union,* 540 N.E.2d 631, 641 (Ind.App.1989).

**\*7** Defendant challenges plaintiff's claim with respect to elements 3 and 5. Defendant argues that the only contract alleged by plaintiff was the confidentiality agreement, and since the plaintiff did not allege that the defendant obtained or even attempted to obtain any confidential information from the employees, there is no allegation of inducement to a breach of that contract. Moreover, defendant ar-

gues, since plaintiff has not alleged that any employee disclosed confidential information or quit Buztronics to join Theory3, there have been no damages resulting from the alleged interference with the contract.

The defendant cites *Beanstalk Group, Inc. v. AM General Corp.,* 283 F.3d 856 (7th Cir.2002), for the proposition that because the plaintiff here has not alleged a breach, dismissal is warranted. Def. Br. at 27. *Beanstalk* does not support that proposition. In *Beanstalk,* the Seventh Circuit concluded based on the pleadings that there had *in fact* been no breach. It affirmed dismissal of the complaint on that basis, not on failure to allege a breach. The court stated:

With our *conclusion that there was no breach* of contract, Beanstalk's other claims collapse, though not, as the defendants argue, because they are sketchily alleged. Federal pleading rules, which require that a complaint only give notice of the plaintiff's claim, and not that it spell out the facts underlying the claim, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir.1999) ( "all that's required to state a claim in a complaint filed in a federal court is a short statement, in plain (that is, ordinary, nonlegalistic) English, of the legal claim.... The courts keep reminding plaintiffs that they don't have to file long complaints, don't have to plead facts, don't have to plead legal theories"), govern even in diversity suits. *Johnson v. Hondo, Inc.,* 125 F.3d 408, 417 (7th Cir.1997); *Colton v. Swain,* 527 F.2d 296, 304 (7th Cir.1975).

*Id.* at 863 (emphasis added).

As the cases cited above show, the inquiry under Rule 12(b)(6) is not whether plaintiff has alleged the essential elements of the claim. The key inquiries are first whether the plaintiff has provided a short and plain statement of the claim, Fed.R.Civ.P. 8(a), and second whether the plaintiff has alleged any facts or particulars that show it cannot possibly

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

be entitled to the relief it seeks. *Warzon v. Drew,* 60 F.3d at 1239. Under Rule 12(b)(6), the elements of a claim are relevant to determine whether the plaintiff has alleged any facts that show it ultimately will not be able to prove one or more of them. In *Beanstalk,* the pleadings themselves established that the plaintiff would ultimately not be able to prove a breach of contract. 283 F.3d at 858-63. The *Beanstalk* plaintiff, in other words, pled itself out of court.

That has not happened here. The complaint sets forth a sufficient short and plain statement of a claim of intentional interference with a contract adequate to put the defendant on notice of the claim. See Cplt. ¶¶ 30-33. The complaint and pleadings do not show that the plaintiff will ultimately be unable to prove breach of a contract or resulting damages. Accordingly, the defendant's motion to dismiss Count III for failure to state a claim is denied.

IV. *Count IV: Declaration of Patent Invalidity and Non-infringement*

**\*8** In Count IV, Buztronics seeks the following declarations from the court: (1) Buztronics has not infringed and is not infringing the '939 patent; (2) the '939 patent is invalid; and (3) Buztronics has not engaged in acts of unfair competition against Theory3. Cplt. ¶ 42. Theory3 has moved to dismiss Count IV for lack of a ripe controversy sufficient to support subject matter jurisdiction.

When considering a motion to dismiss under Rule 12(b)(1), the district court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."*Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir.1993); accord *Long v. Shorebank Development Corp.,* 182 F.3d 548, 554 (7th Cir.1999); see *Madey v. Duke University,* 307 F.3d 1351, 1358 (Fed.Cir.2002) (regional circuit law applies on motion to dismiss for lack of subject matter jurisdiction).

Before a district court may render a declaratory judgment, there must be an actual controversy over which the court may exercise jurisdiction. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-40, 57 S.Ct. 461, 81 L.Ed. 617 (1937). In a patent context, an actual controversy exists if there is (1) an explicit threat or other action by the patentee that creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity that could constitute infringement or concrete steps taken with the intent to conduct such activity. *BP Chemicals., Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993). Focusing on the first prong, the defendant argues that plaintiff has failed to show that it had an objectively reasonable apprehension of an infringement suit.

The plaintiff has the burden of proving by a preponderance of the evidence that its apprehension of being sued was objectively reasonable. *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 887 (Fed.Cir.1992). Courts "look for any express charges of infringement, and if none, then to the 'totality of the circumstances.'" *Id.* at 888, quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988). The evidence in this case shows that Theory3 stopped just short of express charges of infringement, but the totality of the circumstances shows that Buztronics had an objectively reasonable apprehension of being sued.

Buztronics filed this action a few days after Theory3 sent a facsimile letter to dealers and distributors of its products. The letter cast a shadow over Buztronics' efforts to compete with Theory3. The Theory3 letter, issued September 7, 2004, stated that Buztronics' products "appear to be substantially similar to our patented TIREFLYS® and COLORMORPHICS® product lines."Deutsch Aff. Ex. G. The letter added:

[W]e believe that these new products might infringe our intellectual property rights, and we are currently investigating this matter with our attorneys to determine whether any legal action should be taken.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)

**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

**\*9** We want to state plainly that we are committed to protecting and enforcing our patents and other intellectual property, and that we will vigorously defend these valuable rights against anyone we believe is making or selling infringing goods.

*Id.*[FN6]

> FN6. Defendant states that this letter was sent to "Theory3's own dealers and distributors who had expressed concern over [a] letter they had received from Buztronics" stating that Buztronics was preparing to launch a new line of lighting products. Def. Br. at 13. Given the prior business relationship between Theory3 and Buztronics, these customers had also been customers of Buztronics as distributor of the Tirefly. Buztronics was communicating with these customers to generate interest in its own new line of products. Thus, Theory3 sent its letter to customers for whom Theory3 and Buztronics were then competing.

Also on September 7, 2004, Theory3 sent a separate email message to the overseas manufacturer who made Tirefly products for Theory3 and Buztronics. Under the line "Subject: Tireflys infringement," Theory3 wrote in part:

Please be aware that we are resolute in protecting our intellectual property rights from infringement by ANYONE. We have proven in the past that we will take aggressive legal action against anyone who infringes our patents and other intellectual properties, and will do so in the future as necessary.

Deutsch Aff. Ex. H. While this message did not refer by name to Buztronics, it was sufficient to prompt the manufacturer to ask Buztronics for indemnification for any claim that Theory3 might assert.

Under these circumstances, Buztronics' apprehension of an infringement suit was objectively reasonable. Theory3 points out that none of its communic-

ations contained express threats of an infringement suit against Buztronics. A reasonable apprehension of suit "does not require an express charge of infringement and threat of suit; rather, such apprehension may be induced by subtler conduct if that conduct rises 'to a level sufficient to indicate an intent [on the part of the patentee] to enforce its patent,'*i.e.,* to initiate an infringement action."*EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811 (Fed.Cir.1996), quoting *Shell Oil,* 970 F.2d at 887; see also *Arrowhead,* 846 F.2d at 736.

The September 7 communications by Theory3 were sufficient to indicate an intent to enforce its patent against Buztronics. Theory3's messages to the market fit within the Federal Circuit's colorful description of a scenario that can support a declaratory judgment complaint: "In the patent version of that scenario, a patent owner engages in a *danse macabre,* brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity."*Arrowhead,* 846 F.2d at 734-35. When the patentee engages in conduct that creates a reasonable apprehension that he will pursue an infringement suit, "the alleged infringer is not required to wait for the patentee to decide when and where to sue, but can take the initiative and seek declaratory relief."*EMC Corp.,* 89 F.3d at 811.

For the foregoing reasons, this court has subject matter jurisdiction over the plaintiff's claim for declaratory relief. Defendant's motion to dismiss Count IV under Rule 12(b)(1) is denied.

*Conclusion*

Buztronics adequately stated claims for unfair competition under section 43(a) of the Lanham Act and for intentional interference with business and contractual relations under Indiana law. This court has subject matter jurisdiction to decide Buztronics' declaratory judgment action because Theory3 created

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1865512)**

a reasonable apprehension of an infringement suit. Accordingly, Theory3's motion to dismiss Buztronics' claims pursuant to Rule 12(b)(6) and Rule 12(b)(1) is denied.

**\*10** So ordered.

S.D.Ind.,2005.
Buztronics, Inc. v. Theory3, Inc.
Not Reported in F.Supp.2d, 2005 WL 1865512 (S.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.