Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1997 WL 630187 (N.D.Ill.), 44 U.S.P.Q.2d 1904
**(Cite as: Not Reported in F.Supp., 1997 WL 630187)**

Mitsubishi Elec. Corp. v. IMS Technology, Inc.
N.D.Ill.,1997.

United States District Court, N.D. Illinois.
MITSUBISHI ELECTRIC CORPORATION and Mitsubishi Electric Industrial Controls, Inc., Plaintiffs,
v.
IMS TECHNOLOGY, INC., Hurco Companies, Inc. and Does 1-20, Defendants.
**No. 96 C 499.**

Sept. 30, 1997.

*MEMORANDUM OPINION AND ORDER*

WILLIAMS, J.
***1** Defendants IMS Technology, Inc. ("IMS") and Hurco Companies, Inc. ("Hurco") move the court to dismiss Counts I through VII of the Amended Complaint filed by Plaintiffs Mitsubishi Electric Corporation and Mitsubishi Electric Industrial Controls, Inc. (collectively, "Mitsubishi") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For reasons set forth below, the court grants defendants' motion as to Counts II and III, and denies defendants' motion as to the remaining counts.

*Background*

In ruling on this motion to dismiss the court "accept[s] as true the factual allegations of the complaint." *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1343 (7th Cir.1995) (citation omitted). Plaintiff Mitsubishi Electric Corporation is a Japanese corporation affiliated with Plaintiff Mitsubishi Electric Industrial Controls, an Illinois corporation organized under Delaware law. (Am.Compl.¶¶ 4-5.) Defendant Hurco is an Indiana corporation affiliated with Defendant IMS, a corporation organized under Virginia law. (Am.Compl.¶ ¶ 6-7, 17.) Mitsubishi and Hurco compete in the market for manufacture of computer numerical control systems ("CNC systems") used in machine tools. (Am.Compl.¶¶ 1, 49.) In addition, Mitsubishi designs and sells CNC systems, some of which are incorporated into computerized industrial machine tools, such as lathes, drilling machines, and milling machines. (Am.Compl.¶ 24.)

This lawsuit arises out of litigation concerning Patent B1 4,477,754 ("the '754 patent") originally issued to Hurco in 1984. (Am.Compl.¶ 10.) In 1995, Hurco assigned the '754 patent to IMS.[FN1] (Am.Compl.¶ 17.) In 1996, IMS sued a number of Mitsubishi's customers[FN2] for infringing the '754 patent.

> FN1. Mitsubishi claims that Hurco organized IMS solely to own and enforce patents recently assigned to it by Hurco. (Am.Compl.¶ 7.)

> FN2. According to Mitsubishi's Amended Complaint, the following entities were named as defendants in that action: Yamazaki Mazak Corporation, Yamazaki Mazak Trading Corporation, Mazak Corporation, Machinery Systems, Inc., Fox Tool Co., Inc., Okuma Machinery Works, Ltd., Okuma America Corporation, Ellison Machinery Company of the Midwest, Inc., Apollo Machine & Manufacturing Company, Inc., Arpac Corporation, American Control Technology, Inc., Nissan Motor Co. Ltd ., Nissan Motor Car Carrier Co., Ltd. and Nissan Motor Corp. USA, Inc. (Am.Compl.¶ 21.) Unfortunately, Mitsubishi's Amended Complaint failed to identify which of these parties were its customers. However, Mitsubishi's Opposition Brief identifies Yamazaki Mazak Corporation, Yamazaki Mazak Trading Corporation, Mazak Corporation, Machinery Systems, Inc., and Fox Tool Co., Inc. as "specific customers." (Opp'n. Brief, p. 18

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 1:08-cv-00969 Document 26-12 Filed 05/07/2008 Page 2 of 10 Page 2
Not Reported in F.Supp., 1997 WL 630187 (N.D.Ill.), 44 U.S.P.Q.2d 1904
**(Cite as: Not Reported in F.Supp., 1997 WL 630187)**

n. 9) Apparently, the other entities listed above are unrelated to Mitsubishi.

THE '754 PATENT

In 1976, Hurco applied for a patent directed to CNC systems involving an "Interactive Machining System." After the Patent and Trademark Office ("PTO") rejected all pending claims four times, Hurco abandoned its first application in 1980. (Am.Compl.¶ 9.) Over the next year, Hurco filed and abandoned its second application. Hurco then filed a third application in 1981; the PTO examiner rejected all claims introduced in this application. (*Id.*) Following a further PTO rejection in 1984, Hurco canceled some of the claims made in its fourth application. In October 1994, the PTO issued the '754 patent to Hurco. (Am.Compl.¶ 10.)

***2** Mitsubishi claims that Hurco took no action to enforce the '754 patent over the ensuing ten years. (Am.Compl.¶ 11.) In the early 1990's, Hurco suffered a decline in revenues, and substantial losses. To halt these losses and ensure its continued survival, Hurco developed a plan to broadly assert the '754 patent. Specifically, Hurco targeted manufacturers and users of CNC systems and machine tools incorporating CNC systems. (Am.Compl.¶ 12.) Hurco apparently believed that licensing fees generated by this plan would turn its financial fortunes around.

As part of its plan, Hurco requested reexamination of the '754 patent in 1994. Its request for reexamination was based on prior art and arguments submitted in opposition to one of Hurco's Japanese applications corresponding the application resulting in the '754 patent. (Am.Compl.¶ 13.) Mitsubishi claims that Hurco failed to disclose all prior art cited against Hurco's foreign applications (which were counterparts to its U.S. application). In March 1995 the PTO issued Reexamination Certificate B1 4,477,754. (Am.Compl.¶ 14.) Throughout the remainder of this opinion, the '754 patent and its Reexamination Certificate are collectively referred to as "the '754 patent."

THREATS AGAINST MITSUBISHI AND ITS CUSTOMERS

The Amended Complaint charges that Hurco employed patent counsel to threaten infringement lawsuits against Mitsubishi and its customers. In March 1995 Hurco's patent counsel first contacted Mitsubishi by a letter which claimed that "a license is required by Mitsubishi under the U.S. and other Hurco patents." (Am.Compl.¶¶ 15-16.) Defendants then informed Mitsubishi, its customers, and numerous others that CNC systems, machine tools incorporating CNC systems, and processes utilizing such systems infringe on the '754 patent.[FN3] Mitsubishi claims that defendants engaged in this enforcement campaign "without adequate basis in fact or law, and without making a reasonable investigation." (Am.Compl.¶ 18.) As a result of this campaign, Mitsubishi's customers expressed concern about the infringement allegations, and these allegations disrupted Mitsubishi's business. (*Id.*)

> FN3. By this time, Hurco had transferred the '754 patent to IMS. (Am.Compl.¶ 18.)

In late 1995 and early 1996, IMS filed two lawsuits charging infringement of the '754 patent. One of these suits[FN4] named various Mitsubishi customers[FN5] as defendants; the other[FN6] named Mitsubishi itself. (Am.Compl.¶¶ 21, 27.) Later in 1996, IMS sued Mitsubishi and some of its customers.[FN7] This suit alleged that the defendants violated antitrust laws and committed "common law" unfair competition by conspiring to refuse to license the '754 patent. (Am.Compl.¶ 28.)

> FN4. Case number 95-CV-5779, filed in the United States District Court for the Northern District of Illinois. (Am.Compl.¶ 21.)
>
> FN5. See Footnote 2 above.
>
> FN6. Case number 96-23-A, filed in the United States District Court for the Eastern District of Virginia. (Am.Compl.¶ 27.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00969   Document 26-12   Filed 05/07/2008   Page 3 of 10

Not Reported in F.Supp.                                                                                                              Page 3
Not Reported in F.Supp., 1997 WL 630187 (N.D.Ill.), 44 U.S.P.Q.2d 1904
**(Cite as: Not Reported in F.Supp., 1997 WL 630187)**

FN7. This lawsuit, case number 96-206-A, filed in the United States District Court for the Eastern Division of Virginia, named the following defendants: Mitsubishi. Yamazaki Mazak Corporation, Yamazaki Mazak Trading Corporation, Mazak Corporation, Okuma Machinery Works, Ltd., and Nissan Motor Corp. USA, Inc. Apparently, these are all customers of Mitsubishi. *See* Footnote 4 above.

THIS LAWSUIT

**\*3** On March 19, 1996 Mitsubishi filed an Amended Complaint against Hurco and IMS. In Count I of its Amended Complaint, Mitsubishi seeks a declaratory judgment of noninfringement, invalidity and unenforceability regarding the '754 patent. (Am. Compl. ¶¶ 29-41 .) Count II charges defendants with patent misuse for, *inter alia,* improperly attempting to extend the valid scope of the '754 patent. Mitsubishi seeks both monetary damages and injunctive relief on Count II. (Am.Compl.¶¶ 42-45.) In Count III, Mitsubishi alleges that defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring with "various licensees" and "a financial institution holding a security interest in the '754 patent, along with other entities whose identities are presently unknown." The alleged purpose and effect of this conspiracy was to restrain trade in CNC systems and machine tools incorporating CNC systems. (Am.Compl.¶¶ 8, 46-48, 51-52.) In addition, Count III claims that defendants violated Section 2 of the Sherman Act, 15 U.S .C. § 2, by monopolizing or attempting to monopolize the CNC markets. Mitsubishi alleges that defendants' "substantial market presence, predatory acts, and ... power of their ... patent" gave them the market power to monopolize the relevant market. (Am.Compl.¶ 50.) Mitsubishi requests injunctive relief, treble damages, costs, and attorneys' fees on Count III. (Am.Compl.¶ 56.)

Count IV of the Amended Complaint asserts that defendants disparaged Mitsubishi's goods and business by making false and misleading statements about the scope and validity of the '754 patent. Count IV requests injunctive relief. (Am.Compl.¶¶ 57-63.) In Count V, Mitsubishi claims that defendants violated § 43 of the Lanham Act, 15 U.S.C. § 1125*et. seq.,* by making false and misleading statements implying that defendants were the sole legitimate source of non-infringing CNC systems. Accordingly, Mitsubishi seeks injunctive relief on Count V. (Am.Compl.¶¶ 64-70.) Count VI alleges that defendants tortiously interfered with Mitsubishi's current and prospective business relations by sending Mitsubishi customers misleading letters concerning the '754 patent. Count VI does not request specific relief. (Am.Compl.¶¶ 71-77.) In Count VII, Mitsubishi seeks monetary damages for unfair competition which violates Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. (Am.Compl.¶¶ 78-82.)

Defendants filed a Motion to Dismiss Mitsubishi's Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' memorandum in support of their motion specifically attacks Counts III through VII. They also attempt to dismiss Count I on the sole ground that it contains allegations made "on information and belief." Defendants challenge Count II by arguing that patent misuse "can only be a defense and cannot form an independent claim for damages." (Mot. to Dismiss, note 2, pg. 6.)

*Analysis*

**\*4** A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Demitropoulos v. Bank One Milwaukee, N.A.,* 915 F.Supp. 1399, 1406 (N.D.Ill.1996) (citing *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990)). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Colfax Corp. v. Illinois State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir.1996) (citation omitted). The court will dismiss a claim only if "it appears

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Colfax,* 79 F.3d at 632 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

COUNT III: SHERMAN ACT

*Section 1: Combination or Conspiracy in Restraint of Trade*

The first issue the court must resolve is whether Mitsubishi properly alleged a "combination or conspiracy" under Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Section 1"). Section 1 prohibits "every contract, combination, or conspiracy in restraint of trade or commerce." 15 U.S.C. § 1. Accordingly, two or more separate entities must act in concert to trigger liability under Section 1; a single firm acting alone cannot incur liability under this provision of the Sherman Act.

To prove a Section 1 violation, a plaintiff must establish the following elements: (1) concerted action in the form of a contract, combination, or conspiracy; and (2) unreasonable restraint of foreign or interstate trade. Mitsubishi claims that it satisfied its burden by alleging that IMS and Hurco conspired with "licensees and other aiders and abetters" to illegally restrain trade. (Am.Compl.¶¶ 8, 51.)

Section 1 requires *concerted* action; therefore, the Sherman Act requires more than one participant to effectuate a Section 1 violation. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Several officers in a single corporation cannot commit a Section 1 violation among themselves, because they represent the interests of a single economic entity. Similarly, a corporate parent and its wholly owned subsidiary cannot conspire to violate Section 1 because the affiliated group forms a single economic actor. *Copperweld,* 467 U.S. at 769-71.

In addition, an antitrust plaintiff must present evidence that reasonably tends to prove that the defendants had a conscious commitment to a common scheme designed to achieve unlawful objectives. *Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 765, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Courts require unity of purpose or common design among the defendants. *Id.* (quoting *American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Mere allegations of conspiracy are not enough to survive a motion to dismiss; an antitrust plaintiff must allege knowing, intentional participation by the defendants. *Association of Retail Travel Agents, Ltd. v. Air Transport Assoc. of Am.,* 635 F.Supp. 534, 536 (D.D.C.1986). "Allegations of unspecified contracts with unnamed other entities to achieve unidentified anticompetitive efforts do not meet the minimum standards for pleading a Section 1 conspiracy." *Garshman v. Universal Resources Holding Inc.,* 824 F.2d 223, 230 (3rd Cir.1987).

**\*5** In this case, Mitsubishi has not properly alleged a conspiracy under Section 1 of the Sherman Act. Under *Copperweld,* coordinated activity between Hurco (parent) and IMS (wholly-owned subsidiary) is insufficient to support a Section 1 conspiracy claim. *See Copperweld,* 467 U.S. at 771. To overcome this obstacle, Mitsubishi apparently inserted a reference to "various licensees of the '754 patent and a financial institution" in the "Parties" section of the Amended Complaint. (*See* Am. Compl. ¶ 8.) However, Mitsubishi failed to allege any conduct by these coconspirators within the body of Count III.

Instead, the "meat" of the Sherman Act count contains only allegations of what Hurco and/or IMS did to violate Section 1. (*See* Am. Compl. ¶¶ 51(a) through (k).) Mitsubishi alleged no facts concerning the licensees' conscious commitment or involvement in any common scheme. The Amended Complaint offers no suggestion of any connection between the licensees and the conduct which violates Section 1. In its Opposition Brief, Mitsubishi attempts to explain away these problems. Specifically, Mitsubishi promotes the inference that the li-

Not Reported in F.Supp. Case 1:08-cv-00969    Document 26-12    Filed 05/07/2008    Page 5 of 10    Page 5
Not Reported in F.Supp., 1997 WL 630187 (N.D.Ill.), 44 U.S.P.Q.2d 1904
**(Cite as: Not Reported in F.Supp., 1997 WL 630187)**

censees entered into licensing agreements with IMS/Hurco, even though the licensees knew that the '754 patent was invalid or infringed. (Opp'n. at 11.) Mitsubishi claims that the licensees entered these agreements in order to cooperate with defendants in driving out common competitors. (*Id.*)

However, the court finds this argument unpersuasive for two reasons. First, the Amended Complaint contains absolutely no reference to any licensing agreements. Second, this inference is not reasonable in light of the facts alleged in the Amended Complaint. Accordingly, the court refuses to draw this inference. The court grants defendants' motion to dismiss Count III of Mitsubishi's Amended Complaint, as it relates to a violation of Section 1 of the Sherman Act.

*Section 2: Monopolization or Attempted Monopolization*

The second issue before the court is whether Mitsubishi alleged market power under Section 2 of the Sherman Act, 15 U.S.C. § 2. Section 2 makes it illegal to monopolize or attempt to monopolize interstate or foreign commerce. 15 U.S.C. § 2. A single entity, independent of any other actor, can violate Section 2. Section 2 allows plaintiffs to proceed under two separate theories of recovery: monopolization, and attempt to monopolize.

To state a claim for monopolization, a plaintiff must allege that: (1) defendant possesses monopoly power in a defined, relevant market; and (2) defendant willfully acquired or maintained monopoly power, as distinguished from growth or development due to superior product or business acumen. *United States v. Grinnell Corp.,* 384 U.S. 563, 570-71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). An "attempt to monopolize" claim involves proof of similar elements. To establish a Section 2 violation under this theory, a plaintiff must prove: (1) defendant had a specific intent to monopolize; (2) defendant engaged in predatory or anticompetitive acts to further its purpose to monopolize; (3) a dangerous probability of defendant's success in monopolizing a relevant market. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). The third element of an "attempt to monopolize" claim requires evidence that defendant had market power. *Spectrum Sports,* 506 U.S. at 459.

**\*6** Thus, a Section 2 claim under either theory requires an allegation that the defendant possessed market or monopoly power. An entity wields monopoly power if it has the power to control prices or to unreasonably restrict competition. *United States v. E.I. duPont de Nemours & Co.,* 351 U.S. 377, 389, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). To survive a motion to dismiss, a plaintiff must set forth facts sufficient to create an inference that defendant had enough market power to create a monopoly. *Hennessy Indus. Inc. v. FMC Corp.,* 779 F.2d 402, 405 (7th Cir.1985). An allegation of market share alone is insufficient to satisfy this burden. *Lektro-Vend Corp. v. The Vendo Co.,* 660 F.2d 255, 270 (7th Cir.1981).

Similarly, a patent is not sufficient, by itself, to indicate market power. *Walker Process Equip., Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 179, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) (Harlan, J. concurring). A party who enforces a patent procured by fraud on the Patent Office may violate Section 2 only if the other elements of a Section 2 claim are present. *Walker Process,* 382 U.S. at 174. Thus, even if a plaintiff proves fraud on the Patent Office, and that defendant knew about it, the action fails if the plaintiff cannot establish the other elements of a Section 2 claim. *Walker Process,* 382 U.S. at 179 (Harlan, J. concurring).

In this case, Mitsubishi did not properly allege market power. As a result, Mitsubishi cannot state a Section 2 claim for either monopolization or attempt to monopolize. Mitsubishi claims that it satisfied this burden by alleging that Hurco "is one of the largest manufacturers of CNC systems designed and built in the United States ."(Am.Compl.¶ 49.) In addition, Mitsubishi argues that Paragraphs 50

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 630187 (N.D.Ill.), 44 U.S.P.Q.2d 1904
**(Cite as: Not Reported in F.Supp., 1997 WL 630187)**

Case 1:08-cv-00969   Document 26-12   Filed 05/07/2008   Page 6 of 10   Page 6

and 53 of the Amended Complaint preclude the court from dismissing the Section 2 claim. Specifically, Paragraphs 50 alleges that defendants enjoy "substantial market presence", and "power to exclude competition and control prices." Similarly, Paragraph 53 contains the bare allegation that "there is a dangerous probability that defendants will succeed in their unlawful plan and obtain monopoly power in the relevant markets."

Mitsubishi's conclusory allegation that Hurco is "one of the largest producers" of CNC systems, and the mere recitation that defendants possess "substantial market presence" are not enough to allege market power. The Amended Complaint contains no facts which would allow the court to reasonably infer that the defendants had power to control prices or restrain competition. Under *Walker Process,* defendants' patent alone is not a sufficient indicator of market power. *See Walker Process,* 382 U.S. at 179 (Harlan, J. concurring). Accordingly, the court grants defendants' motion to dismiss Count III of Mitsubishi's Amended Complaint, as to the Section 2 claims. Thus, the court dismisses Count III in its entirety.

**\*7** Given the court's resolution of Mitsubishi's Sherman Act claims, it is unnecessary to decide whether defendants are immune from the antitrust laws. Since the defendants have not violated Sections 1 or 2 of the Sherman Act, the court need not reach the issue of immunity.

COUNT IV: TRADE DISPARAGEMENT

The third issue before the court is whether defendants disparaged Mitsubishi's products or business. Mitsubishi claims that defendants violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(8) (the "Deceptive Practices Act"), by making false claims about Mitsubishi's products or business. In relevant part, the Deceptive Practices Act states:

§ 2. A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he: [](8) disparages the goods, services or business of another by false or misleading representations of fact.

815 ILCS 510/2(8)(West, 1997).

An attack on a business rival, no matter how malicious, is not actionable unless it touches upon the rival's goods, services, or business. *Richard Wolf Medical Instruments Corp. v. Dory,* 723 F.Supp. 37, 40 (N.D.Ill.1989). For example, statements which merely accuse a party of being a "vexatious litigant and a patent infringer" do not imply that the party's products are poor. *Richard Wolf,* 723 F.Supp. at 38, 42. However, such statements may disparage the other party's business, by implying that he is dishonest or untrustworthy. *See Herman Miller, Inc. v. Teknion Furniture Sys., Inc.,* Case No. 93 C 7810, 1996 WL 341541, at \*3 (N.D.Ill. June 20, 1996).

Additionally, the statements at issue must be "false or misleading." *Id.* For example, assume that A filed a patent infringement lawsuit against B. If A merely informs X, one of B's customers, about the lawsuit, B has no valid claim under the Deceptive Practices Act. However, bad faith assertions of patent infringement can amount to a violation of the Deceptive Practices Act. *Id.* Expanding on the above example, assume A knows that its patent on widgets is invalid or unenforceable. Furthermore, A tells X that B has infringed A's patent by selling widgets, and that A is the only valid source of widgets. Under these facts, A's bad faith assertions of patent infringement may violate the Deceptive Practices Act. *Lampi Corp. v. American Power Products, Inc.,* Case No. 93 C 1225, 1994 WL 501996, at \*3 (N.D.Ill. Sept.12, 1994).

In the present case, Mitsubishi adequately alleged trade disparagement under the Deceptive Trade Practices Act, 815 ILCS 510/2(8). Mitsubishi's Amended Complaint claims that IMS/Hurco conducted bad faith patent enforcement. (Am.Compl.¶¶ 12-13, 18-23.) Specifically, Mitsubishi alleges that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendants knowingly and wrongfully asserted the '754 patent, which they fraudulently obtained in the first place. (*Id.*) Taken as true for purposes of the motion before the court, these allegations establish that defendants disparaged Mitsubishi's business. Accordingly, the court denies defendants' motion to dismiss Count IV of Mitsubishi's Amended Complaint.

COUNT V: LANHAM ACT CLAIM

**\*8** Next, the court must decide whether Mitsubishi sufficiently alleges that defendants made false or bad faith statements about the scope and validity of the '754 patent. Such statements would violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). In the Lanham Act, Congress granted patent holders broad ability to enforce their patents. This ability includes the right to threaten litigation against suspected infringers. The most common method patent holders employ in this regard is the infringement letter, which informs a potential infringer that it will be sued unless the infringing activity is stopped, or unless the infringer procures a license from the patent holder.

The Lanham Act prescribes limitations on infringement letters. Specifically, patent holders cannot send infringement letters which contain false statements, or that are issued in bad faith. *Art Line, Inc. v. Universal Design Collections, Inc.,* 966 F.Supp. 737, 744 (N.D.Ill.1997). Mere allegations of infringement do not constitute false statements. Instead, these allegations reflect the defendant's conclusion and belief about the validity of its patent. *Art Line,* 966 F.Supp. at 744. By contrast, infringement letters made in bad faith may violate the Lanham Act. *Id.* For example, a seller who exaggerates the scope and validity of his patent, thus creating the false impression that the seller is the exclusive source of the product, may overstep the boundaries set in the Lanham Act. *In re Uranium Antitrust Litig.,* 473 F.Supp. 393, 408 (N.D.Ill.1979); *Chromium Indus., Inc. v. Mirror Polishing & Plating Co.,* 448 F.Supp. 544, 555 (N.D.Ill.1978).

For present purposes, the facts alleged in Mitsubishi's Amended Complaint state a claim for a Lanham Act violation. According to the Amended Complaint, defendants did not simply tell Mitsubishi's customers that Mitsubishi infringed the '754 patent. Instead, defendants conducted a bad faith campaign to exaggerate the validity and scope of the '754 patent. (Am.Compl.¶ 65.) As a result, defendants created the false impression that IMS and Hurco constituted the lone valid source of CNC systems. (*Id.*) Accordingly, the court denies defendants' motion to dismiss Count V of Mitsubishi's Amended Complaint.

COUNT VI: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

The next issue the court must decide is whether Mitsubishi states a claim for tortious interference with either current or prospective business relations. Tortious interference with current business relations focuses on defendant's intentional interference with plaintiff's existing contractual relationships. Tortious interference with prospective business relations centers on defendant's intentional disruption of plaintiff's reasonably expected future relationships. To prove a claim for tortious interference with current business relations, a plaintiff must establish: (1) a valid, enforceable contract between plaintiff and another; (2) defendant's awareness of this contractual relation; (3) defendant's intentional and unjustified inducement of a breach which causes a breach by the other; and (4) damages to plaintiff resulting from the breach by the other. *Reuben H. Donnelley Corp. v. Brauer,* 275 Ill.App.3d 300, 211 Ill.Dec. 779, 655 N.E.2d 1162, 1172 (Ill.App.Ct.1995).

**\*9** The elements of a claim for tortious interference with prospective business relations include: (1) plaintiff's reasonable expectation of entering into valid business relationships; (2) defendant's knowledge of that expectation; (3) defendant's intentional interference directed toward specific parties or an identifiable prospective class of third persons; and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00969    Document 26-12    Filed 05/07/2008    Page 8 of 10

Not Reported in F.Supp. 
Not Reported in F.Supp., 1997 WL 630187 (N.D.Ill.), 44 U.S.P.Q.2d 1904
**(Cite as: Not Reported in F.Supp., 1997 WL 630187)**

Page 8

(4) damages to plaintiff resulting from defendant's conduct. *McIntosh v. Magna Systems, Inc.,* 539 F.Supp. 1185, 1192 (N.D.Ill.1982). To survive a motion to dismiss, a plaintiff claiming tortious interference (present or future) with business relations is not required to specifically identify the third parties defendant interfered with. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33, 37 (Ill.App.Ct.1989). However, a plaintiff must identify a prospective class of third persons subjected to defendant's intentional interference. *Downers Grove Volkswagen,* 137 Ill.Dec. 409, 546 N.E.2d at 37.

In Count VI of its Amended Complaint, Mitsubishi claims that defendants committed tortious interference with business relations. Specifically, Mitsubishi argues that defendants disrupted both its current and prospective commercial relationships by sending misleading letters concerning infringement of the '754 patent. (Am.Compl.¶¶ 74, 77.) In response, defendants attack both the current and prospective tortious interference theories. Defendants argue that neither theory supports liability because Count VI fails to specifically identify Mitsubishi customers who received defendants' allegedly misleading letters. (Mot. to Dismiss at 11-13.)

In this case, Mitsubishi has stated a claim for tortious interference with business relations. Mitsubishi identified a prospective class of third persons subjected to defendants' misleading letters: its "customers, distributors and other prospective and potential customers and distributors." (Am.Compl.¶¶ 72, 74.) Taken as true for purposes of this motion, these allegations satisfy Mitsubishi's pleading burden. Accordingly, the court denies defendants' motion to dismiss Count VI of Mitsubishi's Amended Complaint.[FN8]

> FN8. Defendant's reliance on *Celex Group, Inc. v. Executive Gallery, Inc.,* 877 F.Supp. 1114 (N.D.Ill.1995) and *Hoffman v. Szyszko,* Case No. 94 C 2357, 1995 WL 519815 (N.D.Ill. Aug.30, 1995) is misplaced. In *Celex Group,* the court confronted this issue in the context of a motion for summary judgment, not a motion to dismiss. Judge Castillo even suggested that the nonmoving party in *Celex Group* would have survived a motion to dismiss. *Celex Group,* 877 F.Supp. at 1125. Given its completely different procedural posture, *Celex Group* is clearly distinguishable from the case at bar. *Hoffman* does nothing to improve defendants' argument. *Hoffman* misreads *Celex Group* as a "motion to dismiss" case. *Hoffman,* 1995 WL 519815 at *3. In addition, *Hoffman* cites numerous Illinois state court cases to support its theory that plaintiffs must identify specific third parties. However, these cases were decided under Illinois' strict fact pleading regime, which requires plaintiffs to set forth specific facts which establish the elements of a claim. In federal court, liberal notice pleading is the appropriate standard. Accordingly, *Hoffman* is also distinguishable from the present case.

COUNT VII: UNFAIR COMPETITION

**\*10** Next, the court must decide whether Mitsubishi states a claim for unfair competition in Count VII of its Amended Complaint. Count VII is based on the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("Consumer Fraud Act"). Despite its title, the Consumer Fraud Act is not limited to protecting consumers from unscrupulous trade practices. The Consumer Fraud Act also protects business persons from fraud and unfair competition. *Law Offices of William J. Stogsdill v. Cragin Fed. Bank for Sav.,* 268 Ill.App.3d 433, 206 Ill.Dec. 559, 645 N.E.2d 564, 565 (Ill.App.Ct.1995). Section 2 of the Consumer Fraud Act prohibits

[u]nfair methods of competitors and unfair or deceptive acts or practices, including but not limited to ... the use or employment of any practice de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

scribed in Section 2 of the [Deceptive Practices Act].

815 ILCS 505/2 (West 1997). The only relief available to plaintiffs suing under the Deceptive Practices Act is injunctive relief. However, the Consumer Fraud Act allows plaintiffs to recover damages for the same violations described in Section 2 of the Deceptive Practices Act. Thus, practices described in Section 2 of the Deceptive Practices Act can form the basis of both a claim for injunctive relief (under the Deceptive Practices Act) and a claim for damages (under the Consumer Fraud Act). Mitsubishi employs this approach in the present case. Count IV of the Amended Complaint seeks injunctive relief for defendants' alleged trade disparagement under the Deceptive Practices Act, 815 ILCS 510/2(8). In addition, Count VII seeks monetary damages resulting from the alleged trade disparagement.

Defendants challenge Count VII on the ground that it is not pleaded with specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be alleged with particularity." Mitsubishi argues that Count VII is not grounded on a theory of fraud. Instead, Mitsubishi claims that Count VII states a claim for trade disparagement under Section 2(8) of the Deceptive Practices Act, and requests monetary damages for injury resulting from this conduct. Accordingly, Mitsubishi contends that Rule 9(b)'s heightened pleading standards do not apply to Count VII because it is not based on fraud

The Consumer Fraud Act covers other types of conduct in addition to fraud. *Hoffman,* 1995 WL 519815 at *5. Where a plaintiff alleges a violation of the Consumer Fraud Act based on trade disparagement, rather than fraud, Rule 9(b) does not apply. *Hoffman,* 1995 WL 519815 at *5; *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.,* 657 F.Supp. 1486, 1494 (N.D.Ill.1987). Fraud claims differ fundamentally from disparagement claims. In a fraud case, the defendant personally makes misrepresentations to the plaintiff, so the plaintiff should be able to specifically describe those misrepresentations in the complaint. *See Pain Prevention Lab,* 657 F.Supp. at 1494-95. However, the defendant in a disparagement case makes misrepresentations to third parties, and the plaintiff may be unable to allege those statements with particularity. *Id.*

**\*11** In this case, Mitsubishi properly alleges an unfair competition claim in Count VII of its Amended Complaint. Reading the allegations in Mitsubishi's Amended Complaint in a light most favorable to it, the court finds that Mitsubishi provides sufficient notice of the nature of its claim in Count VII. The specific allegations which state a claim for trade disparagement are described in the "TRADE DISPARAGEMENT" section of this Memorandum Opinion and Order. Since Mitsubishi realleged and incorporated these allegations in Count VII, and because Rule 9(b) does not apply here, Mitsubishi adequately alleges unfair competition under the Consumer Fraud Act. As a result, the court denies defendants' motion to dismiss Count VII of Mitsubishi's Amended Complaint.

COUNTS I THROUGH VII: ALLEGATIONS MADE "ON INFORMATION AND BELIEF"

The next issue the court must address is whether it should dismiss Mitsubishi's entire pleading for containing numerous allegations based on "information and belief." Defendants' memorandum in support of their motion to dismiss claims that

Mitsubishi's pleading is replete with allegations made "on information and belief," which is alone sufficient to justify dismissal of Counts I through VII of the Amended Complaint.

(Mot. to Dismiss at 10 n. 3.) Although defendants buried this seemingly important argument in a footnote, the court will address it briefly.

Rule 8 of the Federal Rules of Civil Procedure outlines the requirements imposed by the federal sys-

Case 1:08-cv-00969    Document 26-12    Filed 05/07/2008    Page 10 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 630187 (N.D.Ill.), 44 U.S.P.Q.2d 1904
**(Cite as: Not Reported in F.Supp., 1997 WL 630187)**

Page 10

tem's notice pleading system. Rule 8(a) requires claims for relief to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." By contrast, Rule 9(b) requires allegations of fraud to be stated "with particularity." As a general rule, allegations based on "information and belief" are sufficient to satisfy Rule 8's pleading requirements. *Chisholm v. Foothill Capital Corp.,* 940 F.Supp. 1273, 1280 (N.D.Ill.1996). Unlike Rule 9, Rule 8 does not require that the circumstances of an allegation be pleaded with particularity. *Id.* "Even in fraud cases, there is an exception to the particularity requirement when the facts on which the allegations are based are in the defendant's control." *Id. See also Bankers Trust Co. v. Old Republic Ins. Co.,*[FN9] 959 F.2d 677, 684 (7th Cir.1992)(where facts indicating "circumstances constituting fraud" are inaccessible to plaintiff, duty to plead fraud with particularity is relaxed).

> FN9. Defendants cite to *Bankers Trust* in footnote 3 of their Motion to Dismiss, but that case is clearly distinguishable from the present case. The plaintiff in *Bankers Trust* had no excuse for alleging facts based on "information and belief." The critical facts alleged in this manner were matters of public record, "not anything within the exclusive control of [defendant]." *Bankers Trust,* 959 F.2d at 684.

**\*12** In this case, Rule 8 provides the standard on which Mitsubishi's allegations must be measured. Counts I (declaratory judgment claim), IV (trade disparagement), V (Lanham Act), VI (tortious interference with contractual relations) and VII (unfair competition) survived dismissal. None of these claims is based on fraud; therefore, Rule 9's heightened pleading standards do not apply to them. Accordingly, Mitsubishi is not required to plead them with particularity. As a result, defendants' motion to dismiss Counts I through VII on this ground is denied.

COUNT II: PATENT MISUSE

Defendants' memorandum in support of their motion to dismiss contains two theories attacking Count II of Mitsubishi's Amended Complaint. First, defendants argue that Count II should be dismissed because it contains allegations based on "information and belief." The court disposed of this argument above. Second, defendants claim that patent misuse, as alleged in Count II, cannot form an independent claim. (Mot. to Dismiss at 6 n. 2.) Although this contention is presented in a footnote, Mitsubishi failed to even respond to it. Accordingly, the court grants defendants' motion to dismiss Count II of Mitsubishi's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See*Fed. R. Civ. Pro. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied").

*Conclusion*

For the reasons set forth above, the court grants in part and denies in part defendants' motion to dismiss. The court grants defendants' motion to dismiss Counts II and III but denies defendants' motion to dismiss the remaining counts of Plaintiffs' Amended Complaint. The court instructs the parties to discuss settlement before the next court date.

N.D.Ill.,1997.
Mitsubishi Elec. Corp. v. IMS Technology, Inc.
Not Reported in F.Supp., 1997 WL 630187 (N.D.Ill.), 44 U.S.P.Q.2d 1904

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.