**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FOBOHA GMBH and FOBOHA US, INC.,    )
                                    )
        PlaintiffS,                 )
                                    )
        v.                          )    No. 08 C 0969
                                    )
GRAM TECHNOLOGY, INC. and JESS      )
GRAM,                               )
                                    )
        Defendant.                  )

**MEMORANDUM OPINION**

Before the court is defendants' motion to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).   We deny defendants' motion for the reasons explained below.

**BACKGROUND**

This case arises from statements allegedly made by Gram Technology, Inc. and its chief executive officer, Jess Gram (collectively, "Gram"), concerning Gram's rights in "a process for molding and assembly of a plastic object using two rotatable molds."  (Compl. ¶¶ 10, 12, 22.)  Gram licenses its patents to third parties without making, using or selling products utilizing its patented inventions.  (Id. at ¶¶ 10, 15-16.)  The particular invention at issue in this case was the subject of Gram's United States patent application U.S. Ser. No. 10/415,281 ("Procedure and Machinery for the Molding and Assembly of an Assembled Object"),

filed with the United States Patent and Trademark Office ("USPTO") on April 28, 2003. (Id. at ¶ 22.) Foboha GmbH and its United States affiliate, Foboha US, Inc. (collectively, "Foboha"), design and manufacture injection molds for the plastics industry. (Id. at ¶¶ 3-5.) They allege that Gram began making "comments and statements of infringement" to members of the plastics industry as early as 2004 — long before the USPTO issued a patent. (Id. at ¶ 23.) The real thrust of the complaint, however, concerns Gram's statements after the USPTO issued a Notice of Allowance on May 24, 2006. (Id. at ¶ 25.)

On or about June 19, 2006, during a trade show held in Chicago, Gram and its attorneys demanded that Foboha take a license for Gram's "patented technology." (Id. at ¶ 26.) A Foboha press release contemporaneous with the 2006 trade show indicates that Gram also contacted other exhibitors and made similar demands. (Press Release "Re: NPE 2006," attached as Ex. 4 to Compl.) Foboha knew that the USPTO had not yet granted Gram's patent and told Gram as much. (Compl. ¶ 27.) They also told Gram that his claims were invalid based upon the prior art reference German Patent DE 4123690A1 (the "German Reference"), which was not cited during patent prosecution. (Id.) After the USPTO issued U.S. Patent 7,081,222 (the "'222 Patent") to Gram on July 25, 2006, Foboha filed a Request for Reexamination "primarily in view of" the German Reference. (Id. at ¶¶ 28-29.) The USPTO granted Foboha's request

and on April 27, 2007 rejected each claim (1-10) of the '222 Patent as either obvious in light of, or anticipated by, the German Reference. (Office Action in Ex Parte Reexamination, attached as Ex. 7 to Compl.) In response, defendants added six additional claims and amended independent claims 1 and 6 of the '222 patent to include the claim language "by a purely mechanical assembly of said parts." ("Amendment Under 37 CFR 1.111," attached as Ex. 8 to Compl., at 2, 4-7.) Plaintiffs allege that these amendments "substantially changed the scope of the original '222 patent claims." (Compl. ¶ 54.)

On or about December 16, 2007, defendants published on their website the following press release concerning the reexamination:

> In the reexamination, requested by Foboha GMBH's attorneys, the [USPTO] has confirmed the patentability of the 10 original claims of the '222 patent, as applied to mechanical in-mold assembly processes. In addition the USPTO have [sic] confirmed the patentability of 6 additional new claims sought by Gram. . . . Upon completion of the reexamination process, Gram intends to enforce its valuable intellectual property rights to the fullest extent permitted by law.

(Press Release, attached as Ex. 9 to Compl.) Two days later, Gram told a representative of one of Foboha's customers, Stull Technologies, that Foboha's "Double Cube Mold" technology infringed the '222 patent. (Id. at ¶¶ 40-48.) Then, in a letter to Foboha's parent corporation dated December 21, 2007, Jess Gram laid out what he believed was the factual basis for his infringement claims. (Letter from Jess Gram to Walter Gruebler et al., dated Dec. 21,

2007, attached as Ex. 10 to Compl.)  In the letter, Gram falsely claimed that another company had already "settled" and that "others might consider doing the same in view of the IP situation and the events that has take place [sic] in the past." (<u>Id.</u> at 3.)

Plaintiffs have filed a four-count complaint alleging federal unfair competition under the Lanham Act (Count I), state unfair competition under Illinois' Uniform Deceptive Trade Practices Act ("UDTPA") (Count II), tortious interference with prospective economic advantage (Count III), and common law unfair competition (Count IV).  Defendants have moved to dismiss the entire complaint.

## DISCUSSION

### A.  Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004).  When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999); <u>Jang v. A.M. Miller & Assocs.</u>, 122 F.3d 480, 483 (7th Cir. 1997).  However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" <u>EEOC v. Concentra Health Serv., Inc.</u>, 496 F.3d 773, 776-77 (7th

Cir. 2007) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, — U.S. —, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

**B.    Rule 9(b)**

The parties dispute whether Foboha's Lanham Act claim is subject to Rule 9(b)'s heightened pleading requirement.  Some judges in this district have applied Rule 9(b), others have not, and it appears that the Seventh Circuit has not addressed the issue.  <u>Compare  Conditioned Ocular Enhancement, Inc. v. Bonaventura</u>, 458 F.Supp.2d 704, 709 (N.D. Ill. 2006) ("Claims that allege false representation or false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b)."), <u>with Logan Graphic Products, Inc. v. Textus USA, Inc.</u>, 02 C 1823, 2002 WL 31507174, *3 (N.D. Ill. Nov. 8, 2002) (applying Rule 8(a)).  "A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct — can implicate Rule 9(b)'s heightened pleading requirements." <u>Borsellino v. Goldman Sachs Group, Inc.</u>, 477 F.3d 502, 507 (7th Cir. 2007).  Plaintiffs allege in the second paragraph of their complaint that "[t]his action results from Defendants' false and misleading descriptions and representations of fact made in interstate commerce regarding Foboha's products." (Compl. ¶ 2.) According to plaintiffs, Gram has for years overstated or misstated the extent of its patent rights in an effort to extract licensing fees. (<u>Id.</u> at ¶¶ 23-24, 39, 41-48.)  In paragraph 76, plaintiffs

allege that the defendants engaged in the "aforementioned acts" — that is, all the acts alleged in the complaint — "maliciously, oppressively, and fraudulently." (Id. at ¶ 76.) Plaintiffs' complaint, and each separately enumerated count, "sounds in fraud." Borsellino, 477 F.3d at 507 (Concluding that the plaintiffs' tortious interference claim was governed by Rule 9(b) where the allegations supporting that claim sounded in fraud.). Therefore, plaintiffs "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

With the exception of a few vague, sweeping allegations, plaintiffs have satisfied their pleading burden. Their allegations are insufficient with respect to defendants' allegedly fraudulent conduct prior to June 19, 2006. They only vaguely allege that during that time frame defendants made "comments and statements of infringement in the industry." They ask us to infer the content of defendants' statements from a press release that plaintiffs issued on October 20, 2004, but the press release does not indicate specifically what defendants said, or when or how they said it. See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Serv. Inc., 536 F.3d 663, 668 (7th Cir. 2008) (To comply with Rule 9(b), the plaintiff must allege "the who, what, when, where, and how" of the alleged fraud.) (internal citation and quotation marks omitted). On the other hand, plaintiffs have sufficiently alleged four specific instances after June 2006 where

the defendants misrepresented the extent of their patent rights to Foboha's detriment. These allegations supply "the who, what, when, where, and how" of each allegedly false statement. <u>Windy City</u>, 536 F.3d at 668.[1] Accordingly, we proceed to address the parties' substantive arguments.

## C. Lanham Act Claim

Among the elements that plaintiffs must ultimately prove to prevail on their Lanham Act claim is that the defendants made false or misleading statements in the context of "commercial advertising or promotion." <u>See</u> 15 U.S.C. § 1125(a)(1)(B); <u>Hot Wax, Inc. v. Turtle Wax, Inc.</u>, 191 F.3d 813, 819 (7th Cir. 1999). In <u>First Health Group Corp. v. BCE Emergis Corp.</u>, our Court of Appeals concluded that allegedly false statements made in the course of negotiations between the defendants and third parties did not constitute "commercial advertising or promotion." 269 F.3d 800, 803 (7th Cir. 2001). "Advertising," the Court explained, means communications that are widely disseminated to anonymous recipients:

---

[1] (<u>See</u> Compl. ¶ 26 (On or about June 19, 2006, defendants and their attorneys contacted plaintiffs at the National Plastics Expo in Chicago, Illinois and demanded that plaintiffs purchase a license for their "patented technology"); ¶ 37 (On or about December 16, 2007, defendants published a statement on their website that allegedly misstates the USPTO's conclusions after the reexamination of the '222 patent); 39 (In a letter addressed to plaintiffs' parent corporation, dated December 21, 2007, defendants falsely claimed that a third party had settled with Gram to avoid litigation); ¶¶ 41-43 (In a meeting on December 18, 2007 Gram met with one of plaintiffs' customers and accused his company of infringing the '222 patent without acknowledging that defendants had "substantially" amended the scope of the patent during reexamination.).)

> Advertising is a form of promotion to anonymous recipients, as distinguished from face-to-face communication. In normal usage, an advertisement read by millions (or even thousands in a trade magazine) is advertising, while a person-to-person pitch by an account executive is not.

269 F.3d at 803-04; see also ISI Intern., Inc. v. Borden Ladner Gervais LLP, 316 F.3d 731, 733 (7th Cir. 2003) (Section 43(a)(1)(B) "is limited to false or misleading 'commercial advertising or promotion' and does not cover all deceitful business practices."). Direct communications, whether in person or by letter, are not commercial advertising or promotion as our Court of Appeals has defined those terms. (Cf. Compl. ¶¶ 38-39 (December 2007 letter to Foboha's parent corporation in which Gram allegedly made false statements about negotiations with a third party); id. at ¶¶ 40-48 (meeting between Jess Gram one of plaintiffs' customers at which he allegedly misrepresented the extent of his patent rights).) Plaintiffs also allege that "[i]n 2004 and continuing through 2006, Defendants' comments and statements of infringement required Foboha to issue press releases informing the industry about the lack of patent rights possessed by GRAM with regard to double cube mold technologies." (Id. at ¶ 23.) According to plaintiffs' 2006 press release, defendants sought out specific exhibitors (including plaintiffs) and asserted that they were infringing defendants' patent rights. (Id. ("We are aware that Mr. Jes Gram of Gram Technology, Inc. has asserted the claims of pending U.S. patent application U.S. Ser. No. 10/415,281 . . . against several

exhibitors at NPE 2006."));  cf.  Enesco Group Inc. v. Jim Shore Designs, Inc., No. 05-C-4371, 2005 WL 3334436, at *4 (N.D. Ill. Dec. 6, 2005) (distinguishing First Health Group on the ground that the plaintiff had alleged "broad-based statements to anonymous customers at trade shows").  Specifically with respect to Foboha, plaintiffs allege that defendants "contacted Foboha at the conference and demanded that Foboha take a license for Defendants' patented technology."  (Compl. ¶ 26.)  So far as the complaint reveals, the only difference between Gram's statements and the defendant's statements in First Health Group is the setting.  We are not persuaded that communicating infringement allegations in person at a trade show is meaningfully different than making the same allegations, directly to the purported infringer, in some other business context.

This leaves the allegedly false and misleading statements on defendants' website, which were made within the context of "advertising or promotion."  See, e.g., M-3 & Assoc., Inc. v. Cargo Sys. Inc., No. 3:99-CV-547 AS, 2004 WL 834690, at *3 (N.D. Ind. Mar. 18, 2004) (Concluding that the defendants' website constituted "promotion[] to anonymous recipients.").  On or about December 16, 2007, defendants announced their "successful defense of the reexamination of Gram's United States Patent No. 7,081,222 (the '222 patent)."  (Dec. 2007 Press Release, attached as Ex. 9 to

Compl.).    Defendants' statement then goes on characterize the
USPTO's conclusions:

> The [USPTO] has *confirmed the patentability of the 10
> original claims of the '222 patent, as applied to
> mechanical in-mold assembly processes*.    In addition, the
> USPTO have confirmed the patentability of 6 additional
> new claims sought by Gram.

(Id.) (emphasis added).    We agree with plaintiffs that a jury could
conclude that the press release is false or misleading.[2]    See
Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 13 (7th Cir.
1992) (whether is a statement is false or misleading under § 43(a)
is a question of fact).    The press release implies that the
"original claims" of the '222 patent were upheld and that those
claims included the mechanical assembly language.    Cf. Laitram
Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1997)("A
patentee of a reexamined patent is entitled to infringement
damages, *inter alia*, for the period between the date of issuance of
the original claims and the date of issuance of the reexamined
claims if the original and reexamined claims are 'identical.'").
Referring to the "successful defense of the reexamination" only
strengthens the impression.    In fact, the examiner rejected
defendants' original claims, (see Office Action in Ex Parte
Reexamination, attached as Ex. 7 to Compl.), and the mechanical
assembly language was added to avoid the prior art reference that

---

[2]/  Defendants baldly state that the press release is "objectively true on its
face," but they do not make any attempt to show that the press release accurately
reflects the USPTO's conclusions.  (Def. Reply at 3.)

Foboha called to the USPTO's attention. (See "Amendment Under 37 CFR 1.111," attached as Ex. 8 to Compl., at 8.). We conclude that plaintiffs have sufficiently alleged that the press release is false or misleading.

## D.    **Tortious Interference**

Defendants contend that plaintiffs have inadequately alleged the elements of tortious interference under Illinois law. See Anderson v. Vanden Dorpel, 667 N.E.2d 1296, 1299 (Ill. 1996) (The elements of a claim for tortious interference with prospective economic advantage are: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference."). Defendants contend that Foboha must allege a business expectancy with a specific third party, citing Schuler v. Abbott Laboratories, 639 N.E.2d 144, 147 (Ill. App. 1993). Our Court of Appeals rejected a nearly identical argument, predicated on the same Illinois authority, in Cook v. Winfrey, 141 F.3d 322, 328 (7th Cir. 1998). The Court's conclusion applies with equal force in this case: "The Federal Rules do not require that [the plaintiff's] complaint allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy." Id. Accepting plaintiffs' allegations as

true, Gram knew that plaintiffs had "valuable economic relationships" with members of the plastics industry and made misleading statements intended to disrupt those relationships. (Compl. ¶¶ 72-74.) They allege that those "relationships have in fact been disrupted" and that they have been damaged thereby. (Id. at ¶¶ 74-75.) This is sufficient to state a plausible claim for relief. See Cook, 141 F.3d at 328 (Concluding that the plaintiff stated a claim by alleging that he had a valid business expectancy and that the defendant "purposely interfered with it.").

Defendants also contend that they have a "complete defense of competitor's privilege." See Speakers of Sport, Inc. v. ProServ, Inc., 178 F.3d 862, 865 (7th Cir.1999) ("Competition is not a tort . . . but on the contrary provides a defense (the 'competitor's privilege') to the tort of improper interference.") (internal citations omitted). As defendants point out, "in some cases a complaint so clearly reveals the existence of the defense that judgment on the pleadings is possible." International Marketing, Ltd. v. Archer-Daniels-Midland Company, Inc., 192 F.3d 724, 731 (7th Cir. 1999). We do not believe that this is such a case. First, plaintiffs specifically allege that the parties are not competitors. (Compl. ¶ 16.) Defendants argue that this allegation is belied by the fact that both parties "develop and design" plastic injection molds. (Def. Mem. at 9-10.) But the mere fact that the parties engage in some of the same activities, and target

some of the same customers, does not necessarily indicate that they are competitors. It is not clear from the complaint, for example, whether users of Foboha's "Double Cube Technology" are choosing plaintiffs' product over defendants' (or vice versa). See A-Abart Elec. Supply, Inc. v. Emerson Elec. Co., 956 F.2d 1399, 1405 (7th Cir. 2005) ("'This "competitors privilege" arises when the business relation concerns a matter involving competition between the actor and the competitor.'") (quoting Mannion v. Stallings & Co., 561 N.E.2d 1134, 1141 (Ill. App. 1990)). Indeed, plaintiffs allege that the defendants do not have a product, as such: they only sell the right not to be sued. (Compl. ¶¶ 10, 14-16 (alleging that defendants are "in the business of licensing allegedly patented technology").) On the face of the complaint it is at best unclear whether the parties are competitors. Moreover, the competitor's privilege is "not available to those who use wrongful means to interfere." Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc., 546 N.E.2d 33, 36 (Ill. App. 1989). "Wrongful means" include "fraud, deceit, intimidation or deliberate disparagement." Soderlund Bros., Inc. v. Carrier Corp., 663 N.E.2d 1, 10 (Ill. App. 1995). Plaintiffs allege generally that Gram has acted "maliciously, oppressively, and fraudulently," (Compl. ¶ 76), and specifically that Gram has repeatedly misrepresented the scope of its patent rights. See Soderlund, 663 N.E.2d at 10 ("A representation is fraudulent when, to the knowledge or belief of

its utterer, it is false in the sense in which it is intended to be understood by the recipient."). Gram responds that the Foboha must also "allege facts that would demonstrate" that the defendants acted maliciously and not to further their own interests, citing Guice v. Sentinal Tech., Inc., 689 N.E.2d 355, 363 (Ill. App. 1997). This overstates Foboha's pleading burden and the scope of the competitor's privilege to interfere. A competitor who uses "wrongful means" to advance his own interests in competing with the plaintiff may still be liable for tortious interference:

> "(1) [o]ne who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor ... does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) *the actor does not employ wrongful means* and (c) his action does not create or continue in an unlawful restraint of trade *and (d) his purpose is at least in part to advance his interest in competing with the other.*"

A-Abart Elec., 956 F.2d at 1405 (quoting Restatement (Second) of Torts, § 768 (1979)) (emphasis added); see also Soderlund, 663 N.E.2d at 10 ("[A]cts of competition which are never privileged include fraud, deceit, intimidation or deliberate disparagement."). Defendants have not demonstrated that they are entitled to the competitor's privilege at this stage of the case.

**E. Bad Faith**

With respect to each count of the complaint, defendants contend that plaintiffs have not satisfied their burden to allege

that defendants acted in bad faith.  See Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1336-37 (Fed. Cir. 1998), *overruled on other grounds by* Midwest Industries, Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999) (requiring plaintiff to plead and prove bad faith to prevail on state law tort claims based upon statements of infringement in the marketplace); Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1353-54 (Fed. Cir. 1999) (adopting the bad-faith requirement for Lanham Act claims). The purpose of requiring the plaintiff to plead and prove "bad faith" when it is otherwise not an element of the underlying claim is to permit patent holders to publicize their patent rights without incurring liability under state and/or federal unfair competition laws.  See Hunter Douglas, 153 F.3d at 1336 ("[I]n a case involving a patentholder's conduct in . . . publicizing a patent, if the plaintiff were to fail to allege that the defendant patentholder was guilty of . . . bad faith in the publication of a patent, then the complaint would be dismissed for failure to state a claim upon which relief can be granted because of federal preemption.").[3]  The parties in this case focus exclusively on Gram's subjective motivations, but bad faith in this context also has an objective component.  Dominant Semiconductors SDN. BHD. v.

---

[3]   See also Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts.  Such action considered by itself cannot be said to be illegal.").

<u>Osram GmBH</u>, 524 F.3d 1254, 1260 (Fed. Cir. 2008). To avoid preemption, the plaintiff must prove that the defendant's statements were "objectively baseless." <u>GP Indus., Inc. v. Eran Indus., Inc.</u>, 500 F.3d 1369, 1374 (Fed. Cir. 2007).[4]

Plaintiffs argue that they are not required to plead bad faith because the defendants did not have any patent rights to publicize. (<u>Cf.</u> Compl. ¶¶ 26-27, Ex. 4 (alleging statements made before the USPTO issued the '222 patent).) They rely primarily on <u>M-3</u>, in which the court concluded that the <u>Zenith</u> line of cases was not controlling because the plaintiff/counterdefendant made its allegedly false statements after the court invalidated its patent. 2004 WL 834690, *2; <u>see also</u> <u>id.</u> at *1 (The defendant continued to reference the invalidated patent in advertisements.). In contrast to <u>M-3</u>, in this case the USPTO notified Gram that it was going to issue a presumptively valid patent. (Compl. ¶ 25 (Alleging that the USPTO issued a Notice of Allowance on May 24, 2006).); <u>see also</u> 35 U.S.C. § 282 ("A patent shall be presumed valid."). The Federal Circuit has indicated that federal patent law preempts claims based upon a patent applicant's good faith statements in the marketplace

---

[4]  The "objectively baseless" standard was first applied to "pre-litigation" infringement allegations (e.g., cease-and-desist letters). <u>See</u> <u>Globetrotter Software, Inc. v. Elan Computer Group, Inc.</u>, 362 F.3d 1367, 1377 (Fed. Cir. 2004). The <u>Globetrotter</u> court specifically reserved the question "whether the objectively baseless standard applies in the context of publicizing a patent through means other than pre-litigation communications." <u>Id.</u> at 1377 n.9. In <u>Dominant</u>, the court explicitly held that the "'objectively baseless' standard applies to publicizing a patent in the marketplace as well as to pre-litigation communications." 524 F.3d at 1260 n.5.

about his pending patent rights.  See Judkins v. HT Window Fashion
Corp., 529 F.3d 1334, 1337, 1342 (Fed. Cir. 2008) (Applying
Zenith's bad-faith standard to statements made by a patent
applicant after the USPTO allowed his claims, but before it issued
a patent.).[5]  The same analysis applies to defendants' statements
during the reexamination's pendency.  See Judkins, 529 F.3d at
1337, 1342; Sosche, 121 F.3d at 680; see also 35 U.S.C. § 307(a)
("[T]he Director will issue and publish a certificate canceling any
claim of the patent finally determined to be unpatentable,
confirming any claim of the patent determined to be patentable, and
incorporating in the patent any proposed amended or new claim
determined to be patentable.").  Defendants may make accurate
statements about their pending patent rights — whether they arise
during patent prosecution or reexamination — without incurring
liability under state tort law or the Lanham Act.

We conclude, however, that plaintiffs have sufficiently
alleged bad faith to survive defendants' motion to dismiss.  They
allege that the defendants falsely told Foboha and others that they
were presently liable for patent infringement before the USPTO
issued the '222 patent.  A claim of present liability based upon a

---

[5]  See also Scosche Industries, Inc. v. Visor Gear Inc., 121 F.3d 675, 680 (Fed.
Cir. 1997) (Pre-Hunter Douglas case: "Scosche offered no evidence from which a
factfinder could conclude that Visor Gear's representation was made in bad faith,
and Scosche points to no authority holding that it is unfair competition for a
patent applicant to advise a prospective customer of the status of his pending
patent application and of the applicant's belief that competing goods will
infringe the patent if and when it issues.").

patent application is "objectively baseless." <u>See</u> <u>Zenith</u>, 182 F.3d at 1354 ("Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out."); <u>see also</u> <u>Gardiner v. Gendel</u>, 727 F.Supp. 799, 801-02 (E.D.N.Y. 1989) (holding counterdefendants liable for unfair competition for asserting that their competitor's customers were presently liable for infringement of a pending patent application). After defendants "substantially changed the scope of the original '222 patent claims" during reexamination, (Compl. ¶ 54), they continued to pursue purported infringers based upon those claims. (<u>See</u> Compl. ¶¶ 42 (Defendants insisted that Stull Technologies "should pay . . . a royalty for infringement of the '222 patent.").) They also issued a misleading press release stating that they had "successfully defen[ded]" the reexamination when, in fact, the USPTO rejected the '222 patent's "original claims." According to plaintiffs, defendants pursued this course of action "maliciously, oppressively, and fraudulently." (<u>Id.</u> at ¶ 76.) Construing their complaint liberally, we conclude that plaintiffs have sufficiently alleged bad faith.

## **CONCLUSION**

Defendant's Motion to Dismiss (21) is denied. A status hearing is set for October 22, 2008.

DATE:       October 15, 2008

ENTER:

John F. Grady, United States District Judge